James Riley, Plaintiff-Appellant and Cross-Appellee, v. School District 124, Board of Education of School District 124, Lee D. Nye, et al., as Members of the Board of Education of School District 124, and Virginia Rolph, Superintendent of School District 124, All of the City of Evergreen Park, County of Cook, State of Illinois, Defendants-Appellees and Cross-Appellants.

Gen. No. 50,857.

First District, Fourth Division.

September 16, 1966.

Rehearing denied October 2, 1966.

Riley and Carlson, of Chicago (Richard F. Sprague, of counsel), for appellant.

Arent J. Jacobson and Edward Wolfe, of Chicago, for appellees.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff appeals from a judgment entered on June 4, 1965,[1] in favor of the defendants on Count II of his

---

[1] While the judgment was entered on June 4, 1965, the plaintiff's complaint was filed on February 20, 1959; on February 20, 1961, an order was entered dismissing the case for want of prosecution, which order was vacated on March 10; on March 30, 1965, the case was again dismissed for want of prosecution; on April 26 a peti-

complaint in which it is alleged that the contract for his teaching services for the 1957–1958 school year was breached by the defendants by their refusal to allow plaintiff to teach. Defendants filed a cross-appeal from a judgment in favor of the plaintiff on Count I of the complaint for monies due him under a contract to teach for the 1956–1957 school year.

Plaintiff was employed pursuant to a written contract to teach the 7th and 8th grades at the Evergreen Park Elementary School for the school year 1956–1957. During the effective period of that contract the parties, on April 30, 1957, entered into another written contract (which was approved by the Board of Education on May 14, 1957) under which the plaintiff was to teach for the school year 1957–1958 at an annual salary of $5,700.

In February or March 1957, plaintiff applied for Naval Officer Training and on or about May 26 he received orders to report for active duty. However, neither his school superintendent (Mrs. Rolph) nor any other school official was notified that plaintiff was assigned to military duty until plaintiff's wife called Mrs. Rolph on June 5 and informed her that he was taking his physical examination. Also on June 5 plaintiff wrote to Mrs. Rolph and informed her that he was departing that night but actually did not leave until after June 10, on which date he took an evening law school examination. The evidence is in conflict as to whether the plaintiff completed various required school records prior to his leaving before the end of the school term. (According to the defendants the school term ended on June 21.)

On July 16, 1957, Mrs. Rolph wrote the plaintiff a letter (addressed to him at Urbana, Illinois, where plain-

---

tion was filed requesting the court to vacate the aforesaid order of March 30 and, while the parties proceeded with the understanding that the case had been reinstated, we find no order of the court to that effect.

tiff was then enrolled at the University of Illinois) in which she expressed dissatisfaction with the plaintiff's conduct, stated that the defendants attempted in vain to mail to him by registered mail the balance of salary due him for the 1956–1957 school year, and his resignation was requested. In response to that letter plaintiff on July 17 wrote Mrs. Rolph in relevant part as follows:

> Upon receipt of the full amount of compensation due me for services rendered in the employ of District #124, I shall tender my resignation.

Subsequently plaintiff received a letter from the defendants dated July 18th with regard to the computation of salary due plaintiff. In that letter the defendants (1) inquired as to whether plaintiff intended to return certain maps which he had allegedly taken, and (2) notified him that they were deducting thirteen days from his pay for his absence in June (June 5 through June 21). On July 26 Mrs. Rolph wrote plaintiff that the Board of Education had regarded his letter as one of resignation and that the resignation had been accepted, whereupon the plaintiff responded on July 28 that he never had any maps in his possession and that there could be no acceptance of the resignation until there had been compliance with all of the terms thereof. On July 31 the defendants sent plaintiff a check for $327.38 (which was never cashed and, while plaintiff asserts that he mailed it back to the defendants, it has never been located) which defendants contended represented the amount of salary due him. On August 6 plaintiff wrote another letter to the defendants in which he asserted that five of the aforesaid thirteen days were improperly deducted because they represented days of a post-school conference which, he contended, "are not days to be included in the calculation of a teacher's salary."

In Count II of his complaint plaintiff alleges that he reported to the school on August 28, 1957, (the beginning

of his contract) [2] and tendered performance of his services as a teacher but the defendants refused to permit him to teach; that he "has always and at all times during and since the date of his employment as aforesaid been lawfully licensed, qualified and competent to teach . . . and has always . . . been ready and willing to teach. . . ." [3]

In his contract to teach school for the 1957–1958 school year plaintiff agreed that the contract was to be "subject to all the laws of the State of Illinois, now or hereafter in force." Relevant Illinois law in force at that time provided that "no one shall teach or supervise in the public schools . . . who does not hold a certificate in qualification. . . ." (Ill Rev Stats, 1955, c 122, § 21–1.) Section 21–15 of chapter 122 (Ill Rev Stats 1955, c 122, § 21–15) requires the certificate to be registered annually and provides that:

> Every applicant when issued a certificate shall pay to the county superintendent of schools a fee of $1.00 which shall be paid into the institute fund. Every certificate issued under the provisions of this Act shall be registered annually. The county superintendent of schools having supervision and control over the school where the teaching is done shall register the certificate before the holder begins to teach otherwise it shall be registered in any county in the

---

[2] According to the uncontroverted testimony plaintiff reported to work in September on the first day of school.

[3] Mr. Burdyl, Principal of Central Junior High School in Evergreen Park and plaintiff's immediate supervisor, testified:

Our School Board decided to put into the school system for the New Year which was starting in the following fall, an entirely new program. The purpose of it [referring to a conversation with the plaintiff on May 21, 1957] was to determine whether Mr. Riley would fit into this program or come back to the school system next year. . . . Mr. Riley told me, "Next year I will be far away from here, that I didn't need to worry about him coming back."

State of Illinois and a fee of $2.00 for the registration or renewal shall be paid into the institute fund.

Plaintiff did not register his teaching certificate for the 1957–1958 school year, nor is there evidence that he has registered it at all since 1956. Plaintiff admits in his reply brief that failure to register a teaching certificate does not invalidate a teaching contract *"as long as it is registered before a teacher begins to teach,"* (emphasis supplied) citing Sloan v. School Directors of District #22, 373 Ill 511, 26 NE2d 846. Plaintiff argues, however, that he never "began" to teach because the defendants refused to allow him to do so, and that therefore registration of the certificate was not necessary. But according to the law (and plaintiff's own admission) the certificate must be registered *before* he begins to teach.

■ Alternatively, plaintiff argues that section 21–15, supra, "merely provides for registration of the certificate annually. If this is done by the county superintendent before the holder begins to teach, its cost is only $1.00, if registered after that, the cost is $2.00." Upon a careful reading of the statute in question, we believe that it requires a certificate to be registered annually before the holder begins to teach; that if he registers in the county where the teaching is done, the cost is $1 but if the holder chooses to register his certificate in some other county, an additional fee of $1 is charged.[4]

■ We find that since the plaintiff had not registered his certificate to teach for the 1957–1958 school year by the first day of school he could not have tendered his services to teach.[5] Plaintiff did not comply with the

---

[4] Assistant County Superintendent of Schools Ray Etherton testified that: "[A] person . . . could not teach unless he had registered his certificate each year."

[5] We note that while plaintiff alleged in his complaint that he was "ready and willing" to teach, he does not allege that he was "able" to teach.

law of this State, as incorporated into his contract, and therefore he is precluded from recovery under that contract. We therefore affirm the judgment of the court on Count II of plaintiff's complaint. In light of our decision on this issue we need not address ourselves to the controversy as to whether the plaintiff abandoned his contract to teach or whether his resignation was effected.

■ With regard to defendants' cross-appeal from the judgment in favor of the plaintiff for $490 under Count I of the complaint, the question as to whether plaintiff completed the records as required of him by statute was for the trial judge as the trier of fact to determine. Similarly, whether plaintiff completed the records as required by the School Board (in accordance with his contract) or, if not, whether he was in substantial breach of his contract, was also for the trial judge to determine. The trial judge heard the evidence and saw the witnesses, and his findings should not be disturbed by a reviewing court unless they are against the manifest weight of the evidence. Reese v. Laymon, 2 Ill2d 614, 119 NE2d 271. We find that the judgment of the court on Count I was not against the manifest weight of the evidence.

Therefore the judgments of the trial court are affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.