ROBERT B. HAGOPIAN *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF EDUCATION OF TAMPICO COMMUNITY UNIT SCHOOL DISTRICT NO. 4 OF WHITESIDE AND BUREAU COUNTIES, Defendant-Appellee.

Third District   No. 77-24

Opinion filed January 23, 1978.—Opinion modified March 31, 1978.

BARRY, J., specially concurring.

Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellants.

Allen D. Schwartz, of Robbins, Schwartz, Nicholas & Lifton, Ltd., of Chicago, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the Circuit Court of Whiteside County which denied petitions for writ of mandamus filed by two petitioners for reinstatement to their teaching positions and for damages.

Two tenure and two nontenure teachers were dismissed by the respondent, Board of Education of Tampico Community Unit School

District No. 4 (hereinafter referred to as Tampico) in their effort to reduce the number of teachers, pursuant to provisions of the School Code of Illinois (Ill. Rev. Stat. 1975, ch. 122, par. 24—12), which provides:

> "If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, *and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service.* If the board within 1 calendar year thereafter increases the number of teachers or reinstates the position so discontinued, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are legally qualified to hold such positions. \* \* \*" (Emphasis supplied.)

■■ If the court has proper parties before it, the threshold issue to be resolved in any proceeding for writ of mandamus is to determine whether the performance sought is that of a specific duty imposed by law or whether the performance sought is discretionary. If petitioner seeks performance of a discretionary duty, mandamus will not lie. Both parties have addressed the issue of discretion in their briefs filed in this court.

The trial court relied upon two cases in determining whether or not the action was properly there upon a writ of mandamus: *Lenard v. Board of Education* (1975), 26 Ill. App. 3d 188, 324 N.E.2d 657, and *McNely v. Board of Education* (1956), 9 Ill. 2d 143, 137 N.E.2d 63.

The *Lenard* case involved a reduction of teaching staff. The merits of the particular teacher dismissal were not reached. The sole issue on appeal was whether or not mandamus was an appropriate remedy, as the petition had been dismissed on grounds that the proper proceeding was under the Administrative Review Act.

The case provides a comparison and discussion of reasons why (some) teacher reduction and discontinuation of particular type of teaching service cases are not suitable for review under the Administrative Review Act. Primary reasons are that the dismissed teacher has no right to a hearing under the statute and the board of education minutes are ordinarily insufficient to constitute a record to provide the basis for administrative review.

In *McNely* the supreme court was reviewing an action for damages for wrongful dismissal of a school superintendent brought by his executrix. Before his death the dismissed superintendent had instituted a mandamus action for reinstatement after the school board fired him in April 1951, stating the position of superintendent was being eliminated. In July 1951, the board hired one principal as combination superintendent-principal without tendering the position to McNely. The lower court decision on the mandamus action is not indicated, but the case went to the appellate court where the mandamus action abated due to the intervening death of Mr. McNely in July 1952. The executrix then commenced the damages action, as mandamus was futile as a remedy without a living person to reinstate.

The mandamus action was discussed in regard to defendant's assertion of res judicata in the second case. In disposing of the res judicata issue, the issue of whether school superintendents were teachers within the meaning of the statute set forth above and the collateral issue of review under the Administrative Review Act were considered, and the supreme court strongly implied that the original action of mandamus by the superintendent was proper and that a writ of mandamus should have issued reinstating the superintendent.

In *McNely* our supreme court made the following observation:

"The notice of dismissal and the resolution on which it was based were bottomed solely on the elimination and discontinuance of the job of superintendent, rather than on dismissal for cause, and under the circumstances of this case the attempted dismissal of the decedent was not in compliance with the statute and he was under contractual continued service with the board." *McNely v. Board of Education* (1956), 9 Ill. 2d 143, 146, 137 N.E.2d 63.

It is clear that in *McNely* the reviewing court was confronted with a factual situation which posed several questions which had to be resolved in order to determine the issues in the case, to-wit, the effect of the elimination of a certain type of service, the dismissal of an individual who was holding a position on a contractual continued service (tenure) basis, the reinstatement of the eliminated position within one calendar year and the failure to tender the reinstated position to the individual who had been dismissed.

■■ The petitioners in the instant case alleged facts that (1) each was a dismissed teacher (who was on contractual continued service) because (2) respondent school board decided to decrease the number of teachers and/or to discontinue some particular type of teaching service where (3) respondent school board retained or employed within one year nontenured teachers in a position (or parts thereof) which the dismissed

teacher was legally qualified to hold, and (4) the petitioners sought reinstatement and damages. We believe the trial court was well supported by precedent to proceed on a petition for writ of mandamus, and we return to the issue of school board discretionary duty which was raised in this case. Respondent maintains that school boards have broad discretionary powers to determine the legal qualifications of teachers and to arrange the school program. Our discussion of these discretionary powers and the exercise thereof by school boards relates to the statutory duty of school boards in the dismissal of tenure teachers.

■■ The statutory term "position" becomes complicated because of the practice of self-contained classrooms for some grades, and departmentalization to some extent in the middle grades, and subject matter segregation for majors and minors in high school. School districts may exercise wide latitude and autonomy in determining which grades will be clustered and which subjects will be grouped under one teacher and which departmentalized. The courts cannot allow school boards, whether in good or bad faith, to rearrange teaching assignments (positions) in ways which defeat the rights of tenured teachers and circumvent the purpose and spirit of the tenure laws. *Relph v. Board of Education* (1977), 51 Ill. App. 3d 1036, 366 N.E.2d 1125.

Turning our attention to the plaintiff Hagopian we find from the record that during his service with Tampico he always taught in the elementary school, never in high school. Hagopian claims in the complaint filed by him that he should not have been dismissed by Tampico but instead he should have been placed in nontenured positions held by either a Mr. Watson (high school band and chorus teacher), Mr. Armsbough (industrial occupations teacher), or Mr. Megli (high school mathematics teacher). The record, however, discloses that Hagopian had never taught band, chorus, industrial occupations or high school mathematics. He had taught courses in social studies, spelling, science, and physical education in the elementary school level. At the time of the plaintiff Hagopian's dismissal he had a Special K-14 teaching certificate with a physical education endorsement. His collegiate background was work in physical education and social studies. It is clearly evident that with his Special K-14 certificate the plaintiff was not legally qualified to teach in any of the positions held by the nontenured teachers.

■■ Until May 14, 1976, Hagopian's teaching certificate was known as a Special K-14 for teaching and supervising physical education. Subsequent to receiving notice of job termination, Hagopian had his credentials re-evaluated and was issued a general certificate for grades 6-12 through the Illinois State Teacher Certification Board. A teacher may hold as many certificates as he may be entitled to and it is the teacher's responsibility to apply for and secure his certificate(s). As we have noted,

in the instant case Hagopian did not apply for a general teaching certificate until after he had received notice that his job was to be terminated. The mere fact that Hagopian applied for and secured a high school certificate is proof of the fact that Hagopian had the requisite college training to entitle him to such a certificate. For some reason known only to Hagopian he never took the necessary steps to secure a high school certificate until after he had been notified that he was to be dismissed. The 60-day notice required to be given to a teacher if that individual is to be dismissed is a mandatory requirement, it can not be waived nor circumvented. The 60-day notice is a statutory requirement, not a school board administrative policy. (See Ill. Rev. Stat. 1975, ch. 122, par. 24—12, and *Bessler v. Board of Education* (1973), 11 Ill. App. 3d 210, 296 N.E.2d 89.) Since the 60-day notice requirement is mandatory a school board must make a determination regarding the dismissal of a teacher during some period of time prior to 60 days before the end of the school term. After proper notice of dismissal has been given as was done in the instant case, does the securing and registration of a valid high school certificate (as was done by Hagopian) prior to the end of the school year serve to relate back or become retroactive so as to prevent the dismissal of a teacher? We believe not. In *Brubaker v. Board of Education* (1977), 46 Ill. App. 3d 588, 360 N.E.2d 1228, the reviewing court held that a teacher's certificate registered after the beginning of a school year cannot relate back to validate an individual's initial employment. (See also *Riley v. School District 124* (1966), 75 Ill. App. 2d 35, 221 N.E.2d 424.) In the instant case at the time the dismissal notice was served upon Hagopian neither the school board or the Regional Superintendent could with any certainty know that Hagopian would receive a certificate. Certificates are issued by the State Teacher Certification Board and such issuance can occur only after an evaluation of the academic transcripts of an applicant. The issuance of a certificate is within the discretion of the Teacher Certification Board. (See *Galloway v. Page* (1971), 1 Ill. App. 3d 107, 272 N.E.2d 662.) A school board cannot gaze into a crystal ball and determine what a teacher's qualifications will be at some future date. As we have previously stated, a board must base its decisions as to the dismissal of a teacher on the qualifications of that teacher during some period of time prior to 60 days before the end of a school year. At the time that Hagopian received notice that he was to be dismissed he held a special K-14 teaching certificate with a physical education endorsement. At this time (when he received notice of dismissal) Hagopian was not legally qualified to teach any position held by a nontenured teacher. During his service with Tampico, Hagopian always taught in elementary schools, never in high school. Since there was no position held by a nontenured teacher for which Hagopian was legally qualified to teach we find that his dismissal

by Tampico was proper. Having determined that his dismissal was proper it follows that his prayer for damages for wrongful dismissal is of no substance.

■■ Next, we discuss an element of mandamus which is determinative of the case as regards the petitioner Foley. Mandamus requires a petitioner who is ready to benefit if the requested performance of a statutory duty by respondent is ordered.

Mrs. Foley found another teaching position at a parochial school for the 1976-1977 school year at $6,800. She indicated on cross-examination that she would not return to a $11,225 Tampico position until the current school year ended.

To imply that a dismissed tenure teacher must remain unemployed to pursue a mandamus action, or must abruptly leave another school district if mandamus is granted, would be of dubious legal, social and economic propriety. We believe that the courts can fashion more compatible remedies in cases where the teacher finds interim employment.

In examining the issue of Mrs. Foley's legal qualifications we find that she holds a limited State elementary certificate (K-9) issued in 1941. This type of certificate is no longer issued, but is still valid under current law. (See Ill. Rev. Stat. 1975, ch. 122, par. 21—15.) The limited certificate would be issued to persons who had not completed an entire degree program. See also Ill. Rev. Stat. 1941, ch. 122, par. 501c, which provides:

"§3. Limited certificates shall be as follows:

First. A limited elementary school certificate shall be valid for four years for teaching in the lower nine grades of the common schools. * * *

This certificate shall be issued upon a successful examination to applicants who have completed sixty semester hours of work in elementary training courses in a recognized higher institution of learning including ten semester hours in education, five semester hours of which shall be in student teaching. The examination shall include such subjects as may be prescribed by the State Examining Board. When obtained by examination this certificate shall be renewable at the end of the first four year period upon certified evidence that the holder has completed fifteen semester hours of work since the issuance of the certificate and at the end of the succeeding four year periods upon certified evidence that the holder has completed fifteen semester hours of work in a recognized higher institution of learning *until such time that the applicant has completed all the requirements for a bachelor's degree in a recognized higher institution of learning* with a minimum of one hundred twenty semester hours including sixteen semester hours in education. Thereafter, it shall be renewable in

periods of four years upon successful teaching experience and professional growth." (Emphasis supplied.)

We note, however, that section 3 of the 1941 statute which pertains to limited certificates (Ill. Rev. Stat. 1941, ch. 122, par. 501c) did not become effective until July 1, 1943. Mrs. Foley's teaching certificate was issued on the 10th day of July 1941, so we must examine the law in effect at that time regarding limited teaching certificates. The controlling law (Ill. Rev. Stat. 1939, ch. 122, par. 486) provides in part as follows:

"Fifth. A limited elementary school certificate shall be valid for four years for teaching and supervising in the lower ten grades of the common schools. It shall be issued to persons who have completed 60 semester hours of work in a recognized higher institution of learning including ten semester hours in education, 5 of which shall be practice teaching. *It shall be renewable for periods of four years upon successful teaching experience and professional growth.*

This certificate shall be issued upon a successful examination to applicants who have completed 30 semester hours of work in a recognized higher institution of learning including 5 semester hours in education. The examination shall include: physiology, penmanship, grammer, reading, orthography, geography, History of the United States, Illinois history and civics, arithmetic, the State Course of Study, principles and methods of teaching, general science, algebra, English, European history, and two of the five sciences: botany, zoology, physics, chemistry and physiography. When obtained by examination this certificate shall be renewable once upon certified evidence that the applicant has completed a total of 60 semester hours of work in a recognized higher institution of learning. Thereafter, it shall be renewable for periods of 4 years upon successful teaching experience and professional growth." (Emphasis added.)

■■ In examining the above provision, we find that a holder of a limited teacher's certificate such as Mrs. Foley could have the same renewed for periods of four years upon successful teaching experience and professional growth. At the time she received her certificate there was no requirement that she obtain a bachelor's degree. This requirement came into being for individuals who received certificates after the passage of the provisions contained in the 1941 statutes (Ill. Rev. Stat. 1941, ch. 122, par. 501c), but as we have previously stated this particular legislative enactment did not become effective until July 1, 1943.

In 1951 legislation was enacted which, in effect, rewrote the article on certification of teachers. (See Ill. Rev. Stat. 1951, ch. 122, par. 21—13.) This cited statutory provision at first blush seems to require that holders of

limited teaching certificates pursue some further collegiate education. After this 1951 legislation was enacted, the then superintendent of Public Instruction sought an opinion from the Attorney General as to its effect on certificates issued between July 1, 1929, and July 1, 1951. On June 29, 1953, in Opinion No. 50, the Attorney General advised that additional college credit for such certificate holders was not required and all that was required for the renewal of a certificate such as that held by Mrs. Foley was evidence of satisfactory professional growth. The requirement of satisfactory professional growth could include but did not mandate additional college attendance.

We are aware of the fact that an Attorney General's opinion has only an advisory effect; however, we agree with Opinion No. 50, dated June 29, 1953, because of the language contained in section 21—14 of the School Code (Ill. Rev. Stat. 1951, ch. 122, par. 21—14), which provides:

"§21—14. This Article shall not be retroactive beyond the effective date of the Act of which this Article is a continuation. *All certificates valid at the time the Act of which this Article is a continuation went into effect shall be continued in force and be renewable upon evidence of satisfactory professional growth as defined in this Article.* All valid certificates issued under the provisions of Article 3 of this Act are continued in force until their exchange and shall be exchanged prior to June 30, 1953 for limited certificates of equal rank as provided in sections 21—3 through 21—11. The right to apply for such exchange terminates June 30, 1953." (Emphasis added.)

The above-quoted statutory provision preserved the validity of Mrs. Foley's certificate, and she has regularly maintained such certificate.

Section 24—12 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—12) extends a preference to tenured teachers over nontenured teachers if a tenured teacher is legally qualified to hold a position. Without making a detailed recital of Mrs. Foley's qualifications, we do conclude that she is legally qualified to teach in the position held by Kevin Baker, a nontenured teacher. Baker is teaching reading, math and music. Mrs. Foley has educational background of 11 1/3 hours in language, 8 2/3 hours in mathematics, and 12 2/3 hours in music. In addition, she has taught all elementary school subjects in the third and fourth grades from 1965 through 1971. Upon the merger of school districts she taught art classes in elementary and high school as well as departmentalized classes in English, spelling and music.

The records in the clerk's office of this court will reflect that we have heretofore denied a petition for rehearing filed by the plaintiff-appellant. The records in the office of the clerk will further reflect that upon the court's own motion the order denying plaintiff-appellant's petition for

rehearing has been vacated and that the said petition for rehearing has been granted and this opinion will replace in its entirety the previous one filed in this cause.

For the reasons stated, the judgment of the circuit court of Whiteside County is affirmed as to the plaintiff-appellant Hagopian, but reversed as to the plaintiff-appellant Foley. The writ of *mandamus* as to the plaintiff-appellant Foley should issue, and this individual should be reinstated as a tenured teacher with the defendant-appellee Board of Education of Tampico Community Unit School District No. 4.

Affirmed in part and reversed in part.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE BARRY, specially concurring:

I am in agreement with the result reached in the majority opinion. With regard to the plaintiff Robert B. Hagopian, I feel obligated to express my own views regarding the perplexing problem of teacher cutbacks for economic reasons that forced the action of the defendant Board of Education of Tampico Community Unit School District No. 4. By statute the defendant is required to give teachers, both tenured and nontenured, written notice at least 60 days before the end of the school term that he will be dismissed or not be rehired. The defendant here was faced with the difficult task of deciding whether plaintiff Hagopian was "legally qualified" to hold a position currently held by a nontenured teacher. The applicable statute is silent as to when the determination of whether a tenured teacher is "legally qualified" to replace a nontenured teacher should be made. (Ill. Rev. Stat. 1975, ch. 122, par. 24—12.) Without the guidance of a time certain in the statute the defendant came to the same conclusion as the majority opinion, that the teacher must be "legally qualified" to take the position of the nontenured teacher at some point in time prior to 60 days before the end of the school term.

I agree with the majority opinion in this conclusion but wish to emphasize the problem caused by the legislature in drafting section 24—12 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—12) without a time provision for determining when a tenured teacher must be "legally qualified" to teach in another position, grade, or subject area. The majority opinion in construing section 24—12 (Ill. Rev. Stat. 1975, ch. 122, par. 24—12) reads into the statute a time provision for a tenured teacher to become legally qualified to replace a nontenured teacher in the event of economic cutbacks. I agree that this is the only practical method for this court to follow, but believe a better result is possible, and that the legislature should amend the statute giving consideration to this and problems of a similar nature in the future.