PETER HANCON, Plaintiff-Appellant, v. BOARD OF EDUCATION OF BARRINGTON COMMUNITY UNIT SCHOOL DISTRICT NO. 220, LAKE COUNTY, Defendant-Appellee.

Second District   No. 83—1077

Opinion filed January 17, 1985.—Rehearing denied February 27, 1985.

Lawrence Jay Weiner, Fredric Bryan Lesser, and Joan M. Eagle, all of Weiner, Neuman & Spak, of Chicago, for appellant.

Andrea R. Waintroob and Wesley A. Wildman, both of Vedder, Price, Kaufman & Kammhold, of Chicago, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, Peter Hancon, appeals from a summary judgment entered in favor of defendant, Board of Education of Barrington Community Unit School District No. 220 (the board), and a *mandamus* action brought by him seeking reinstatement of his employment as a school teacher. Hancon contends that when honorably dismissed he was legally qualified for positions held by other teachers with less seniority to which he should have been assigned; that other teachers with less seniority than Hancon should have been reassigned in order to

create a vacancy in positions he was qualified to fill; that there were disputed questions of material fact precluding summary judgment; and that the trial court erred in denying his motion to strike portions of defendant's supporting affidavit to its motion for summary judgment.

The Teacher Tenure Act (the Act) provides, *inter alia*:

"If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. As between teachers who have entered upon contractual continued service, the teacher or teachers with the shorter length of continuing service with the district shall be dismissed first ***. If the board has any vacancies for the following school term or within one calendar year from the beginning of the following school term, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are legally qualified to hold such positions. ***." (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.)

Also pertinent to this case are the standards set forth in the Illinois program for Education, Supervision and Recognition of Schools (State Board of Education Document No. 1). Section 7—2, entitled "Minimum Requirements for Teachers of Junior High and Departmentalized Upper Elementary Grades," requires:

"18 semester hours in the area of major teaching assignment, including at least 5 semester hours in each course where subject matter areas are divided into two or more specific courses. This requirement also applies to teachers of the 6th, 7th, and/or 8th grade where the organizational pattern is a junior high or the instructional pattern is in part or entirely departmentalized. When departmentalized in part, the requirement only applies to departmentalized teachers."

The pleadings, motion for summary judgment and response thereto, together with the supporting affidavits and exhibits of the

parties, disclose these uncontroverted facts:

Hancon's employment by the board was honorably terminated, effective at the end of the 1981-82 school year, due to a reduction of teachers after the closing of a school; his position was taken by a more senior teacher. Hancon had been a tenured teacher in the school system since 1977 and held an Illinois teaching certificate for grades six through 12; he had taught seventh grade history for the board for seven years at that time. During his employment by the board, Hancon filed transcripts of course credits he had earned in institutions attended by him, as is required by the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—23). These reflected Hancon had received a bachelor of arts degree in 1974 from the University of Illinois at Chicago Circle in the teaching of history and a master's degree in history in 1980 from the same institution. The transcripts also noted the transfer of credit for 12 quarter hours completed at Triton College for a course described as "Humanities in Western Culture."

Section 24—12 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—12) requires that written notice be given at least 60 days before the end of the school term to a teacher in contractual continued service; such notice had to be given to Hancon by April 11, and was given on April 1, 1982. He met with Assistant Superintendent Frederic Vorlop on April 5, and they reviewed Hancon's transcripts. Hancon inquired whether the courses he had taken would qualify him to teach language arts in grades six through eight, and he told Vorlop that he was qualified to teach sixth grade social studies. Vorlop was unable to make these determinations from the transcripts and suggested to Hancon that he have them evaluated by the State Board of Education to determine whether he was legally qualified to teach any subject other than history.

On May 12, 1982, Vorlop received a letter from Hancon, who advised that he had spoken to the certification office of the State Board of Education and was told he was qualified to teach a sixth grade class which is 50% social studies. Hancon's letter further noted that the certification office would "recognize an English component" in the humanities credits from Triton College, but first required a letter from Triton College specifying the number of hours of that course considered to be language arts. On May 11, Vorlop had also received a letter from Triton College which confirmed that the credit hours Hancon earned for humanities courses qualified as language arts credits. On June 16, 1982, Vorlop received a letter from the State Board of Education stating that its evaluation of Hancon's transcripts established that he had earned in excess of 18 semester hours of credit in

language arts and was legally qualified to teach such courses.

The board declined to reverse its decision of April 1, 1982, to dismiss Hancon after the State Board of Education notified it on June 16, 1982, that he was legally qualified to teach language arts in addition to history courses. The board stated that it could not have been certain earlier that the State Board of Education would accept the humanities credits towards language arts and that its acceptance came too late on June 16 to allow the board to dismiss another less senior teacher with the requisite 60-day notice so as to give Hancon a position. The board also stated that there was no "50% social studies" position in its schools.

I

Hancon contends first that at the time he was dismissed on April 1, 1982, he was, in fact, legally qualified to teach one of several middle school language arts positions held by tenured teachers who had less seniority and who were retained in the next school year. He argues that although his transcripts may not have explicitly shown he had completed the requisite 18 credit hours of language arts, the board should have investigated and clarified the transcripts prior to the deadline for teacher dismissal or consulted Hancon in sufficient time for him to do so. The board responded that at the time it dismissed Hancon, shortly before the 60-day notice deadline, it had no basis from the information contained in his educational transcripts to determine he had sufficient credits in language arts to legally qualify him to teach that subject. The board asserts that it was too late to timely dismiss another teacher to make a place for Hancon when it was notified by the State Board of Education that the humanities credits were accepted as language arts and legally qualified him for teaching that subject. The board argues that it was Hancon's responsibility, not the board's, to take extraordinary measures, as was required here, to determine if he was legally qualified to teach another subject.

If, when he was dismissed, Hancon was legally qualified to teach middle school language arts, then the board was required to retain him and dismiss one of the less senior tenured teachers who taught middle school language arts. Under the Act, a more senior tenured teacher has the right to "bump" a less senior tenured teacher, and thus avoid dismissal, if he is qualified for the position held by the less senior teacher. (Ill. Rev. Stat. 1981, ch. 122, par. 24—12; *Herbach v. Board of Education* (1981), 94 Ill. App. 3d 889, 894, 419 N.E.2d 456, *appeal denied* (1981), 85 Ill. 2d 565.) To be qualified under State

Board of Education requirements to teach language arts in grades six through eight at a junior high or middle school where classes are departmentalized according to subject, a teacher not only must be certified by the State to teach those grades, but also must have completed 18 semester hours of college courses in language arts. (Subsection 7—2.1, State Board of Education Document No. 1.) That requirement is incorporated into the meaning of the phrase "legally qualified" as it appears in the Act. *Walter v. Board of Education* (1982), 93 Ill. 2d 101, 111, 442 N.E.2d 870.

■■ ■ Hancon did file his transcripts with the superintendent of schools as is required by the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—23); however, the local school authorities were unable to determine from them whether he was qualified to teach other than history courses. The legislature has vested authority to determine "legal qualifications" necessary to teach in the State Board of Education (*Walter v. Board of Education* (1982), 93 Ill. 2d 101, 114, 442 N.E.2d 870; Ill. Rev. Stat. 1981, ch. 122, par. 2—3.25) and Assistant Superintendent Vorlop referred Hancon to the State Board's certification office for evaluation of his transcripts. Ultimately, apparently after receiving further information from Triton College describing the content of the questioned humanities credits, the State Board did accept them for language arts qualification purposes. By this time, however, the board had necessarily already sent out the requisite 60-day notices to those teachers who would be dismissed and could not timely do so to others.

The court considered a similar question in *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 372 N.E.2d 990, and its reasoning persuades us that to sustain Hancon's argument on this issue would impose a responsibility not required by the School Code and place an intolerable burden on local school boards. In *Hagopian,* a tenured teacher who had always taught in an elementary school received a notice of dismissal because of a reduction in elementary school teaching positions. The teacher then requested the State Teacher Certification Board to reevaluate his credentials and it issued to him a teaching certificate for grades six through 12. As in the present case, Hagopian had the requisite college credits to hold the high school certificate when he was dismissed, but he had not taken the necessary steps to secure it until after his dismissal notice. The court noted that the mandatory notice provision of the Act required the local school board to determine which teachers to dismiss prior to 60 days before the end of the school year and held that receipt of a teaching certificate after the dismissal deadline may not relate back

to render a dismissed teacher qualified. *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 945, 372 N.E.2d 990; see also *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 384 N.E.2d 1321; *Board of Education v. Schmidt* (1978), 64 Ill. App. 3d 513, 381 N.E.2d 400.

Hancon seeks to distinguish *Hagopian*, arguing that he was always qualified to teach language arts and it just took an evaluation of his transcripts to confirm it, whereas in *Hagopian* the teacher was not legally qualified until he received his high school teaching certificate. We see no difference; in *Hagopian* the teacher always had the requisite credits for high school certification, and, as in the present case, his transcripts required evaluation by a body other than the local school board before it could be ascertained what were his additional teaching qualifications.

Hancon also contends that if the board could not itself ascertain his additional teaching qualifications, it should have earlier sought clarification or so advised Hancon in advance of the dismissal deadline so he could have done so.

The Act, however, only requires the board to determine which teachers are to be dismissed at some time before the 60-day notice must be issued. (Ill. Rev. Stat. 1981, ch. 122, par. 24—12; *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 267, 384 N.E.2d 1321; *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 945, 372 N.E.2d 990.) The board did so based upon its review of Hancon's transcripts as filed by him without any clarification of the humanities credits noted therein. Hancon fails to point to any guidelines then available to the board as to how to apply or interpret the 18 semester hours' requirement of the State Board of Education when courses listed in a transcript are not clearly identified as constituting a particular area of study. We deem it to have been reasonable of the board to limit its evaluation of Hancon's qualifications to what was evident from the transcripts, and agree it was not clearly evident the humanities credits could be deemed language arts coursework. Just as in *Hagopian*, the burden of assuring all teaching qualifications are clearly presented to a school board fairly rests upon the teacher. Requiring otherwise, especially in a large school system, would place a heavy and time-consuming research burden on local school boards, whereas the teacher who has completed college courses which are ambiguously listed on his transcript is in the best position to provide timely clarification in his own self-interest so as to avoid the unfortunate circumstances of the present case.

We conclude that the trial court correctly entered summary judgment in favor of the board insofar as Hancon sought reinstatement to

language arts positions held by less senior teachers who were retained for the 1982-83 school year.

## II

Hancon also contends the summary judgment was improperly entered, as the board rehired a teacher in the summer of 1982 to fill a vacant position for the 1982-83 term teaching high school language arts who was less senior than was Hancon. He does not dispute the fact that he was not legally qualified to teach high school language arts, but asserts that a middle school language arts teacher who was so qualified should have been transferred to the high school position and Hancon then reinstated in the transferred teacher's former position.

■ It has been held that a dismissed teacher who is not legally qualified to fill the position held by a probationary or less senior tenured teacher has no right to have a school board create a position he could fill by taking only some of the different courses taught by other teachers in established teaching positions and combining them into one position comprised of several areas of instruction, all of which the dismissed teacher is qualified to teach. (*Peters v. Board of Education* (1983), 97 Ill. 2d 166, 172-73, 454 N.E.2d 310; *Higgins v. Board of Education* (1981), 101 Ill. App. 3d 1003, 1008, 428 N.E.2d 1126, *appeal denied* (1982), 91 Ill. 2d 552.) However, Hancon argues that what is at issue here is not the creation of a position, but a mere transfer of a teacher so there is a vacant position which he is fully qualified to hold as it originally existed. He asserts that given the Act's goal of protecting those teachers who have served a school district the longest, the exercise of the board's discretionary power to transfer tenured teachers based upon the school system's needs was required so that he could fill the position which would then become vacant.

■ It seems apparent that the Act does not require the machinations suggested by Hancon. Section 24—12 permits a school board to dismiss a tenured teacher only after first dismissing probationary and less senior tenured teachers who hold positions which the senior tenured teacher is qualified to teach. It also provides:

> "If the board has any vacancies for the following school term or within one calendar year from the beginning of the following school term, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed *so far as they are legally qualified to hold such positions.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 122, par. 24—12.)

Since the high school position at issue was a vacancy which occurred

after Hancon was dismissed, and it is not disputed he was not qualified to teach high school language arts, the Act gave Hancon no right of reinstatement in it. The legislature did not require the type of teacher transfer Hancon urges in order to create a new vacancy which he would be qualified to fill. In this regard we note *Herbach v. Board of Education* (1981), 94 Ill. App. 3d 889, 419 N.E.2d 456, *appeal denied* (1981), 85 Ill. 2d 565. While *Herbach* did not rely upon the same provision of the Act, as the dismissed teacher was not challenging refusal to reinstate her in a position which became vacant after her dismissal, the court rejected the claim that other teachers should have been transferred so that a position would exist which was not held by a teacher having greater seniority and which the plaintiff would be qualified to hold. (*Herbach v. Board of Education* (1981), 94 Ill. App. 3d 889, 419 N.E.2d 456, *appeal denied* (1981), 85 Ill. 2d 565.) We therefore affirm the summary judgment entered as to this issue.

### III

■ We next consider Hancon's assertion that when dismissed he was legally qualified to teach a sixth grade social studies class then being taught by another tenured teacher, Kim Gordon, who had less seniority. He argues that she should have been dismissed from that position and Hancon retained either in it or in the combined position to which Gordon was subsequently assigned for the 1982-83 school year.

Hancon was given his notice of honorable dismissal in April 1982, at least 60 days prior to the end of the 1981-82 school term, as is required by the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—12), but he retained his employment as a history teacher to the end of that term. There is, therefore, no occasion to consider whether Hancon had any right to "bump" Gordon during that school term.

■ Hancon also asserts that he should have been reinstated in the social studies position to which Kim Gordon was assigned for the 1982-83 school year. He argues that, when dismissed, he was qualified to teach a sixth grade position which is comprised of 50% social studies and the balance of language arts classes.

We do not agree. As earlier discussed, Hancon's qualifications to teach language arts were not established by the State Board of Education until June 16, 1982, when it so notified the local board. Gordon was appointed to the social studies position for the new term on June 10, and the board was not required to offer it to Hancon at that time.

■ Nor did Hancon's affidavit raise a genuine issue of fact as to his qualifications to hold the position to which Kim Gordon was ap-

pointed for the 1982-83 school year. He there stated only that "he believes he was legally qualified to hold the position assigned to Mrs. Gordon." On appeal, for the first time, Hancon argues that the reading, penmanship and spelling areas of that position could be characterized as "language arts" and, together with his qualification to teach a position of 50% social studies, he met the formal training requirements of the State Board of Education. We find that Hancon's bare allegation of his belief that he was qualified for this position was insufficient to contradict the positive statements of the Board's supporting affidavit which described that position and stated Hancon was not qualified to hold it. The new matters raised for the first time on appeal in this regard may not be considered as a basis upon which to overrule the trial court. See *Marynczak v. D & L Transport Co.* (1981), 94 Ill. App. 3d 381, 418 N.E.2d 972.

In view of our resolution of the issues discussed we need not consider whether the trial court erred in denying Hancon's motion to strike portions of the Board's supporting affidavit.

Accordingly, the summary judgment of the circuit court will be affirmed.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.