ESTA L. NEWMAN, Petitioner and Plaintiff-Appellant, *v.* BOARD OF EDUCA-TION OF BLUFFS COMMUNITY UNIT SCHOOL DISTRICT NO. 2 OF SCOTT COUNTY, Respondent and Defendant-Appellee.

Fourth District    No. 16652

Opinion filed August 7, 1981.—Rehearing denied September 3, 1981.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellant.

Rammelkamp, Bradney, Hall, Dahman, Kuster & Collins, of Jacksonville (Larry D. Kuster, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Tenured teacher case.

But this one is not run-of-the-mill.

There is pressing need for the State Board of Education to publish reasonable, consistent and comprehensive guidelines in this area.

First, however, the case.

On January 21, 1980, Esta Newman filed a petition for writ of *mandamus* and a complaint for declaratory relief seeking reinstatement as a full-time teacher in the Bluffs school district. Following a bench trial, the trial court denied the petition for writ of *mandamus* and—after a limited remandment from this court—the complaint for declaratory relief.

The issue in this case is whether Mrs. Newman, a tenured teacher, is "legally qualified" to teach certain junior high school courses now being staffed by nontenured faculty members.

BACKGROUND

At trial, Mrs. Newman testified that she holds a bachelor's degree in education from Western Illinois University from which she graduated in

1964. She holds a valid Illinois teaching certificate covering grades 6-12 and has been employed since 1964 by the Bluffs Community High School. On March 15, 1979, she was informed by the school board that her full-time position for the following year was being reduced to a part-time position. During the 1978-1979 school year, petitioner was assigned four periods of home economics, a consumer education class, one study hall, and one planning hour. During the 1979-1980 school year, petitioner taught only four periods of home economics, all at the high school level.

Robert Rogers, superintendent and elementary principal of Bluffs Community School, testified that a nontenured teacher named Schwabe taught sociology, American history, and geography at the high school level, together with sixth and seventh grade social studies and eighth grade history at the junior high level. A second nontenured teacher, Michael MacMillan, taught sixth through eighth grade junior high science. He also taught developmental and high school biology and maintained a study hall. The consumer education course which petitioner had previously taught was incorporated into the sociology class now taught by Schwabe.

With the exception of the petitioner and a librarian, all high school teachers in the Bluffs Community School were assigned a planning period as part of their work load. Though Rogers indicated that the planning period was intended for faculty to meet with the students, he admitted that this policy was unenforced and that teachers were free to use the time as they chose, provided they pursued school-related matters.

William Helton, assistant manager, Department of Recognition and Supervision, Public School Approval Section, Illinois State Board of Education, testified that he is responsible for evaluating transcripts of faculty. While he does not certify teachers, he does review their qualifications to perform particular teaching responsibilities. These qualifications are regulatory rather than statutory. After examining petitioner's transcript, Helton concluded that the certificate automatically permitted her to teach *home economics* at the high school level. But petitioner's ability to teach other subjects is conditioned on meeting qualifications set forth in a document entitled The Illinois Program for Evaluation, Supervision, and Recognition of Schools (Document No. 1).

Document No. 1 provides that a junior high school teacher must have 18 semester hours of college credit in his major teaching assignment to teach that subject at the junior high level. There is no stipulation as to the number of semester hours necessary to permit an instructor to teach a course if it is his minor or secondary assignment. Based on these requirements, Helton indicated that petitioner was "legally qualified" to teach *science* at the junior high level. In addition, she could teach *social*

*studies* at the junior high level if it was her secondary teaching assignment.

These conclusions were based on petitioner's transcript, which revealed that she had received credit for 21 1/3 semester hours of college level science courses and 10 2/3 semester hours in social studies courses.

On cross-examination, however, Helton qualified his otherwise unconditional endorsement of petitioner's legal qualifications to teach these subjects. Document No. 1 places a further restriction on faculty in departmentalized schools such as the Bluffs Community School. (Departmentalized schools are those in which subject matter areas are divided into two or more specific courses.) In such schools, a teacher must demonstrate that he has at least five semester hours in the particular area taught in the particular course.

While Helton acknowledged that classifications such as life science, environmental science, or earth science are not necessarily fields of college concentration or designated as specific college courses under those particular rubrics, petitioner would have to have five hours of college credit in those areas to enable her to teach them at the junior high level if the curriculum of Bluffs Community School provided for specific courses in those areas. In response to a hypothetical, Helton indicated that petitioner could not, for instance, teach geology since she did not have five semester hours of credit in geology at the college level. Since, in a departmentalized school system, particular aspects of a subject area may be offered under nontraditional titles, Helton would need to examine the specific content of each particular course to determine if petitioner was capable of teaching that course.

Helton also testified that though petitioner was qualified to teach social studies at the junior high level as a secondary assignment, her qualification to do so was predicated on the express condition that her major teaching assignment was at the junior high and not the high school level. Petitioner rested, and a motion for directed verdict by respondent was denied.

Respondent's first witness was Maurice Kellogg, a professor of science education at Western Illinois University. Kellogg has 22 years of experience in the field of education and extensive experience in certifying general science majors for teaching upon evaluation of their transcripts. Kellogg also testified extensively as to his continuing role in developing and evaluating curricula throughout the State.

He identified several science textbooks used in the Bluffs Community School for grades 6-8. In his opinion, the material contained in the particular books represented specialized content and could not be classified as general science. The sixth grade course offering—environmental science—involved the interaction of living things with the environment; food change, population, and pollution. The seventh grade science

course—life science—involved an exploration of living things, including plants, animals, and some human biology. The eighth grade science course—earth science—included study in the areas of geology, water, weather, oceanography, astronomy, and limnology. These specialized areas of science represented a developing trend in educational circles toward specialized course content.

It was Kellogg's opinion that at the time petitioner attended Western Illinois University, science course offerings were evenly divided between the biological and physical sciences. Though acknowledging that present college curricula do not offer a major or minor area of study in environmental science, for instance, there are any number of particular university courses that a student may take as electives which cover different facets of that subject area.

Kellogg also stated that students in sixth through eighth grade would be exposed to a significant portion of the material contained in the specialized courses if the courses were reorganized into general, all-encompassing science courses. The overlap in material would not, however, be identical. Kellogg concluded that in his opinion, the Bluffs junior high school science program was not a general science curriculum.

Michael MacMillan testified that he taught sixth through eighth grade junior high science. Each of these courses covered separate and distinct material from that which would be taught in general science courses.

The trial court took the cause under advisement and subsequently denied both the petition for writ of *mandamus* and the complaint for declaratory judgment.

## Issues

Our question is whether Mrs. Newman, a tenured teacher, is "legally qualified" to teach any of the junior high departmentalized *science* or *social studies* courses such that respondent school district was required to tender these positions to her prior to offering them to nontenured faculty members. Petitioner relies upon section 24—12 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—12) for reinstatement. The statute governs the dismissal of teachers and provides in part:

> "[I]n all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service." (Ill. Rev. Stat. 1979, ch. 122, par. 24—12.)

We note that this court has held that any reduction in teacher employment

is encompassed by the statutory words "removed" or "dismissed." *Caviness v. Board of Education* (1978), 59 Ill. App. 3d 28, 375 N.E.2d 157.

There is no dispute that petitioner holds a teaching certificate governing grades 6-12 (see Ill. Rev. Stat. 1979, ch. 122, par. 21—5), and that she is a tenured faculty member. The dispute concerns whether petitioner meets the semester-hour requirements of Document No. 1 of the State Board of Education.

In *Lenard v. Board of Education* (1979), 74 Ill. 2d 260, 384 N.E.2d 1321, the supreme court held that at the threshold level, a teacher is "legally qualified" within the meaning of the statute *only* if the teacher meets the State Board's semester hour requirements in addition to possessing a valid teaching certificate. Document No. 1 sets forth the following minimum requirements for teachers of junior high and departmentalized upper elementary grades:

"7—2.1   18 semester hours in the area of major teaching assignment, including at least 5 semester hours in each course where subject matter areas are divided into two or more specific courses. This requirement also applies to the teachers of 6th, 7th, and/or 8th grade where the organizational pattern is a junior high or the instructional pattern is in part or entirely departmentalized." State Board of Education Document No. 1, at 29 (1977).

### SCIENCE

Petitioner's initial contention is that she is qualified to teach sixth through eighth grade *science* courses taught by MacMillan by virtue of the fact that she has accumulated 21 1/3 semester hours of college level credit in the science area. Petitioner failed to offer any evidence, however, as to the course content of either her college science courses or the junior high courses taught at Bluffs Community School. *That information is critical to petitioner's claim.*

The Bluffs Community School science program is departmentalized. The present junior high course offerings in environmental, life, and earth sciences are specialized courses covering specific aspects of the general field of science. In order to prevail, petitioner must demonstrate that she has achieved a minimum of five semester hours of college credit in the subject matter areas offered in the particular junior high courses. Absent any evidence concerning either the fields of concentration to which petitioner was exposed in her college science coursework or the content of the junior high course offerings, it was impossible for the trial court to make a determination that she meets the five-semester-hour requirement. We conclude that the trial court's finding that petitioner failed to prove she was legally entitled to teach the science courses now staffed by

nontenured personnel was not against the manifest weight of the evidence.

## SOCIAL STUDIES

Petitioner's second contention is that she is qualified to teach, as her minor teaching assignment, the *social studies* courses taught by Schwabe. Although petitioner did not have to demonstrate that she has achieved any minimum number of semester hours in the social studies area since the State Board of Education sets no minimum requirement for secondary teaching assignments, Helton, the State Board officer, testified unequivocally that a teaching position in social studies as the secondary assignment is expressly predicated upon the condition that petitioner's primary teaching assignment be at the junior high level. Since petitioner's primary assignment is home economics at the high school level, the trial court's finding that petitioner failed to demonstrate that she was legally entitled to teach any social studies courses at the junior high level was not against the manifest weight of the evidence.

## SHORTCOMINGS OF THE SYSTEM

The problems which arise in this case must be laid in large measure squarely at the feet of the State Board of Education. The issue of basic qualifications which an instructor must possess to teach courses within our school system is fundamental. Yet, the State teaching certificate and Document No. 1 do not provide sufficient guidance to either individual teachers or to local school boards to determine that question with any degree of certainty.

Petitioner's State certificate covering grades 6-12 certifies her to teach in the general field of "science." In order to be granted certification, petitioner had merely to receive credit for a certain number of semester hours of college coursework in science courses. But the certification process is deficient in two respects. The process (1) does not inquire into or evaluate the relative expertise which an individual may possess in the subject field (see Document No. 1, n. 3, app. A (1977)), and (2) the certificate makes no attempt to identify the particular subject matter contained in the college courses for which credit was received.

These shortcomings result in two distinct deleterious results. First, the process makes no attempt to establish if the individual teacher is *academically* qualified to teach, since certification is all but automatic if credit of any kind is received for the college work. This case represents a clear example of that problem. A review of Mrs. Newman's transcript reveals that she received a grade of D in each of the eight science courses she completed in college. Nevertheless, the board maintains that she is

"legally" qualified to teach science as the *primary* teaching assignment at the junior high level, irrespective of the fact that she is at best marginally qualified in an academic sense to teach the subject. A similar review of the grades petitioner received in her social studies college courses reveals an almost identical pattern. In the four courses for which she received credit, she earned three D's and one C.

One of the announced purposes of the statute (Ill. Rev. Stat. 1979, ch. 122, par. 24—1 *et seq.*) is "to improve the Illinois school system by assuring personnel of experience and ability a contractual continued service status based upon merit * * *." (*McNely v. Board of Education* (1956), 9 Ill. 2d 143, 147, 137 N.E.2d 63, 66.) Common sense would certainly dictate that if a college student would not qualify to graduate with a straight D average, a teacher with that same average is not qualified to teach the subject.

When a local school board initially hires a teacher for a particular position, it has available his college transcript and from it can determine whether that person is academically qualified to teach the courses that will be assigned to him. It is a peculiar anomaly of the system that the local board may then be required, under the tenure act, to allow that teacher to teach other courses, for which the board would never have hired him—in the first instance—because of his disastrous performance in his college courses in those subjects. As it stands, the system works to the disadvantage both of schools and of some prospective teachers, for it encourages local boards to look at an applicant's academic qualifications in areas for which he is not being hired. Thus, a person who is especially well qualified academically to fill a particular position might not be hired because of the local board's fear that some day it may be required to put him in a position which he would not be academically qualified to hold.

The certification process is critically deficient in another respect. By granting certification in only broad disciplinary areas, the State Board ignores the fundamental changes in educational philosophy and curricula which have occurred over the past several decades. Gone are the days of the one-room school house (such as this writer attended for six elementary years), staffed by the renaissance man capable of imparting to students the full breadth and scope of any particular discipline. In their place are classrooms and programs which separate students not only by age but, in some instances, as to particular abilities. These students are then subject to a curriculum which has been designed to selectively examine relatively minute aspects of particular disciplines in varying degrees of specialization.

In departmentalized programs, in which instructors must demonstrate that they possess minimum semester hour requirements to teach particular courses, the lack of any meaningful way in which to translate

prior college course specialization into an objective basis which can be compared with the substance of present-day course materials works its severest hardship upon those faculty whose previous college training is in disciplines which are subject to volatile changes either in content or format. Petitioner's transcript reveals that six of the eight science courses she attended are described simply as "biology" or "chemistry." "Microbiology" and "general organic chemistry" are the only ones for which the labels suggest any degree of particular specialization. Without standards for determining whether an instructor has the basic number of hours in a particular subject matter area, the Board's "evaluation" of transcripts is hollow rhetoric. Individual instructors and local school boards are thus left to their own devices to make these determinations.

These shortcomings of the certification system, when combined with the deficiencies of Document No. 1, can produce some illogical results. A striking example involves the Board's position concerning secondary teaching assignments. The Board does not require that instructors with such assignments have any minimum number of hours in a particular area within a general field. It is, therefore, theoretically possible for an individual in a departmentalized school to teach a course for which he has had absolutely no formal training at the college level. This anomalous result obtains by virtue of the fact that the State certifies people only in broad areas, such as "social studies." The Board has concluded that the area of "social studies" includes such diverse topics as world history, American history, civics, political science, economics, geography, sociology, and anthropology. (See Document No. 1, rule 7—3.21, at 36.) Hypothetically, an instructor who has completed a number of history and political science courses in college and is armed with Board certification in social studies in the minor area would be "qualified" to teach economics or anthropology even though the individual has never taken a college course in these subjects! This is simply not our brand of common sense.

In the final analysis, absent any cohesive system by which faculty qualifications can be determined, individual boards of education must bear the responsibility for making those determinations. This is consonant with their statutory mandate which provides in part:

> "[S]chool boards shall appoint all teachers, *determine qualifications of employment* and fix the amount of their salaries subject to limitation set forth in this Act." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 122, par. 24—1.)

We have previously construed this passage as empowering school boards to perform discretionary acts, the exercise of which a court will not overturn unless the board's action is palpably arbitrary, unreasonable, or capricious. (*McLain v. Board of Education* (1978), 66 Ill. App. 3d 1024, 384 N.E.2d 540.) In the absence of reasonable guidance from the State

Board of Education, local school boards must have at least some minimum discretion in determining who is qualified to teach our children.

## CAVEAT

But we stress that this discretion must be exercised with extreme caution and circumspection in order not to subvert another fundamental purpose of the tenure act, that being the protection of teachers from political, partisan, capricious, fickle, and irregular decision making. (*McNely.*) We are also not unmindful that particular school boards—whether in good faith or bad—may rearrange curriculum and teaching positions in ways which defeat the rights of tenured teachers. Such a practice cannot be tolerated under the guise of discretionary authority and duty. (*Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 372 N.E.2d 990.) We recognize, however, that there is a certain tension between the rights of tenured faculty and the rights of children in this State to be taught by personnel of experience and ability. (*McNely.*) We also point out that particular grade points cannot be solely determinative in a decision as to academic qualifications but must be considered together with all other aspects of the individual's professional expertise and capacity.

Though it may be argued that the exercise of this discretion raises the spectre of instability in the ranks of tenured faculty, a comprehensive, consistent set of guidelines and regulations from the State Board could alleviate any number of potential problems; and, failing that, courts always remain available as the final arbiter of discretionary acts performed by a local school board. *McLain.*

For the foregoing reasons, the order of the circuit court of Scott County denying the petition for writ of *mandamus* and the complaint for declaratory relief was not against the manifest weight of the evidence and it is affirmed.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.