JAMES I. HIGGINS, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT NO. 303, BUREAU COUNTY, Defendant-Appellee.

Third District    No. 81-125

Opinion filed November 17, 1981.

Ralph H. Lowenstein, of Drach, Terrell & Defenbaugh, P. C., of Springfield, for appellant.

Everett E. Nicholas and Lorence H. Slutzky, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

James I. Higgins received notice at the end of the 1975-1976 school term that he was being honorably dismissed from his teaching position with the Board of Education of Community Unit School District No. 303, Bureau County, Illinois, due to a reduction in the size of the teaching staff. Mr. Higgins, believing that his dismissal violated certain statutory rights of tenured teachers, petitioned for a writ of *mandamus* in the Circuit Court of Bureau County seeking reinstatement of his employment. The circuit court, after hearing evidence on the petition, concluded that Mr. Higgins was not entitled to the relief he requested. He prosecuted this appeal to obtain our review of the lower court order.

The tenure rights which provide the foundation for the appellant's petition are created by the legislature and set forth in the School Code:

"If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least 60 days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, and in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. If the board within 1 calendar year thereafter increases the number of teachers or reinstates the position so discontinued, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are legally qualified to hold such positions." (Ill. Rev. Stat. 1975, ch. 122, par. 24—12.)

Neither party disputes that Mr. Higgins was a teacher in contractual continued service. What is disputed is whether Mr. Higgins "is *legally qualified* to hold *a position* currently held by a teacher who has not entered upon contractual continued service." (Emphasis added.)

In Illinois the legal qualifications for classroom teachers are determined by regulations promulgated by the Illinois State Board of Education. Specifically, the qualifications are set out in *The Illinois Program for Evaluation, Supervision and Recognition of Schools, Circular Series A, No. 160.* Therein, the minimum education and/or experience requirements are detailed for teachers of every subject matter at every grade level. Although the inadequacy of the requirements set forth in *Circular Series A, No. 160,* has been noted in other decisions (*Newman v. Board of Education* (1981), 98 Ill. App. 3d 976, 424 N.E.2d 1331), they nevertheless offer far more guidance to the definition of "legally qualified" than exists for determining the appropriate definition of "a position."

"The statutory term 'position' becomes complicated because of the practice of self-contained classrooms for some grades, and departmentalization to some extent in the middle grades, and subject matter segregation for majors and minors in high school. School districts may exercise wide latitude and autonomy in determining which grades will be clustered and which subjects will be grouped under one teacher and which departmentalized. The courts cannot allow school boards, whether in good or bad faith, to rearrange teaching assignments (positions) in ways which defeat the rights of tenured teachers and circumvent the purpose and

spirit of the tenure laws." (*Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 944, 372 N.E.2d 990, 994.)

In reviewing the decision of the circuit court, we must determine whether "a position" existed which the appellant, Mr. Higgins, was "legally qualified" to fill. The factual setting in which this dispute arises follows.

The appellant began employment with the appellee Board of Education during the 1970-1971 school term. For six terms, 1970-1971 through 1975-1976, he taught certain history courses, and for four terms, 1972-1973 through 1975-1976, he also taught psychology and consumer education. At the close of the 1975-1976 term, the appellant received the statutory 60-day notice of honorable dismissal due to a decrease in the number of teachers employed by the appellee.

Subsequent to the dismissal of the appellant, Carol Radtke, the appellee's French teacher, requested and was granted a maternity leave of absence for the following school term. Radtke had taught four classes of French and one class of mathematics during the prior school term. The appellee was compelled to fill Radtke's vacancy with someone legally qualified to teach a foreign language, as foreign language was a required offering in the high school curriculum. (*Circular Series A, No. 160.*) After interviewing several applicants for the vacancy, only one, Steven Sacco, was willing to accept a teaching job with the appellee, and then, for economic reasons, only if the job was to be full-time. Sacco was assigned to teach four French classes, an independent French study program, and world history. Later, the fourth year French class was dropped because of low enrollment, and Sacco was reassigned a consumer education class. Sacco had not entered upon contractual continued service.

Kathy Malone was employed by the appellee district for the 1975-1976 term as well as the 1976-1977 term. In both years, she taught six classes in the area of English communications. In addition, during the second semester of the 1976-1977 school year, Malone taught a course in psychology. Like Sacco, Malone had not yet entered upon contractual continued service.

■■ In his petition, the appellant urges that he was "legally qualified" to teach the history and consumer education courses taught by Sacco as well as the psychology class taught by Malone. He seeks reinstatement to "a position" teaching those three classes and supervising study halls. No argument is made that the appellant was qualified to teach either French or English communications.

The appellee Board of Education defends its actions by asserting first that Mr. Higgins is not "legally qualified" to teach any of the three subjects enumerated in his petition. Second, it argues that "a position" within the definition of the tenure statute cannot be created by assembling a collage of classes taught by various nontenured teachers. The circuit court

found it unnecessary to rule on the merits of the Board of Education's first defense, because it resolved that even if Mr. Higgins were "legally qualified" to teach history, consumer education and psychology, no such "position" within the statutory definition existed during the 1976-1977 school term. We agree.

No regulations or case law has been cited before this court which offers any comprehensive definition of a teaching "position" as contemplated by the Illinois statute. (Ill. Rev. Stat. 1975, ch. 122, par. 24—12.) This is not to say that the courts have been silent. Indeed, as previously referenced, the court in *Hagopian* determined that school districts must be allowed "wide latitude and autonomy" in creating teaching positions, while admonishing that such discretion must not be exercised, in good or bad faith, to "circumvent the purpose and spirit of the tenure laws." *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 944, 372 N.E.2d 990, 994.

■■ We understand *Hagopian* to permit broad discretion to school boards to create new teaching positions and to rearrange teaching assignments in all cases except where the continued employment of a tenured teacher might be jeopardized. When a tenured teacher's employment is at stake, teachers cannot be shifted from one established position to another—even in good faith—if the rights of tenure would be defeated. We do not understand *Hagopian* to preclude the incidental reassignment of a single class to an otherwise established teaching position. Of course, a pattern of incidental reassignments could well be designed to frustrate the purposes of the tenure law, and such a bad faith action by the school board clearly could not be countenanced.

In the instant case, the appellee did not reassign classes to create wholly new positions, nor was there a shifting of tenured and nontenured teachers so that the appellant was no longer legally qualified for the positions taught by Sacco and Malone. Rather, two established teaching positions, one in French and one in English communications, were filled by nontenured teachers. The appellant was qualified to fill neither of these established positions. The incidental assignment of a single additional class to each of these established full-time positions was done, according to the circuit court, without intent to defeat appellant's tenure rights. The subsequent under-enrollment in fourth year French likewise did not constitute the wholesale rearrangement of teaching assignments such that the established teaching position in French was altered in complexion.

■■ It may always be necessary when a school district decreases the number of teachers in its employ to undertake a reassignment of certain classes offered in the curriculum. Those teaching positions which result from such a reassignment require the closest scrutiny so that the rights of a

dismissed tenured teacher are not trammeled upon. Nevertheless, to hold that a tenured teacher may draw a single class or two from teaching positions he is otherwise unqualified to teach and then assert rights of tenure as to that part-time position of his own creation would exceed the protections offered by the statute.

In *Herbach v. Board of Education* (1981), 94 Ill. App. 3d 889, 419 N.E.2d 456, the plaintiffs were tenured teachers who were dismissed. Although they were not legally qualified for any of the three teaching positions held by nontenured teachers, they sought to force the school board to exercise its discretion by reassigning retained tenured teachers to one of those three positions, thereby creating a teaching position by way of the reassignment that they were legally qualified to fill. The court held in *Herbach* that such reassignment was not required by law. We believe this decision is consistent with and supportive of our understanding of *Hagopian*.

In further support of our reading of *Hagopian* is the decision in *Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 423 N.E.2d 903. There, the court held that part-time teaching could not be relied on to establish tenure. In explaining the rationale for its decision, the court expressed reservations about a system where "tenure rights [could] be fractionalized." The court worried that

" * * * [s]chool administrators would need to fit the 'fractionally tenured' teachers together like a jigsaw puzzle. The growing number of 'fractionally tenured' part-time teachers might undermine the desirable continuity and stability normally afforded students by full-time teachers, who have time to develop greater rapport with their students." (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 348, 423 N.E.2d 903, 908.)

Such a result could follow were we to adopt appellant's theory of this case. Not only would appellant be teaching a part-time schedule, but the teaching assignments of Sacco and Malone would also be reduced. The only result would be a diminution in the opportunity for interaction between the students and their mentors.

■■■ The cases cited by the appellant do not differ with the views we have previously expressed. In *Caviness v. Board of Education* (1978), 59 Ill. App. 3d 28, 375 N.E.2d 157, a tenured teacher who was reduced from full-time to part-time teaching was permitted to assume the full-time teaching position of a nontenured teacher. No attempt was made to create a new teaching position from the assignments of several others. In *Edwards v. Board of Education* (1980), 84 Ill. App. 3d 374, 405 N.E.2d 478, the court required that a dismissed tenured teacher be offered the established part-time position held by a nontenured teacher. It was not suggested that the dismissed tenured teacher could create a part-time

position where none previously existed. Finally, the court in *Newman v. Board of Education* (1981), 98 Ill. App. 3d 976, 424 N.E.2d 1331, repeated the admonition of *Hagopian* that school boards could not be permitted to rearrange curriculum and teaching positions in ways which defeat the rights of tenured teachers. That is clearly the law, but tenured teachers do not have the right to object to the incidental assignment of a single course to established teaching positions which they are unqualified to teach, thereby fractionalizing tenure rights, unless a pattern of incidental reassignments be proved. That proof is absent here.

For the reasons above stated, and with reliance on the authorities hereinbefore set forth, the decision of the Circuit Court of Bureau County is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.