GARY T. HAYES, Petitioner-Appellee, *v.* BOARD OF EDUCATION OF AUBURN COMMUNITY UNIT SCHOOL DISTRICT, Respondent-Appellant.

Fourth District    No. 17037

Opinion filed December 18, 1981.—Modified on denial of rehearing March 1, 1982.

Richard A. Hollis, of Springfield, for appellant.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

We confront here troublesome problems arising in the application of the tenure provisions of section 24—12 of The School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—12) when, as is increasingly the case, a school district reduces its teaching staff because of declining enrollments. At issue is the meaning of that portion of section 24—12 which requires the district to "remove or dismiss" teachers of lower seniority before dis-

missing a tenured teacher of higher seniority "who is legally qualified to hold a position" currently held by a teacher of less seniority.

On August 18, 1980, petitioner Gary T. Hayes, a tenured teacher in the employment of respondent, Board of Education of Auburn Community Unit School District No. 10 of Sangamon County (Board of Education), filed suit in the circuit court of Sangamon County seeking a writ of *mandamus* compelling respondent to assign him to a full-time schedule of courses which he was qualified to teach. The petition alleged petitioner had been employed as a full-time tenured teacher for the 1979-80 school year but had been reduced to part-time teaching for the 1980-81 school year, while teachers of less seniority were assigned to teach courses he was qualified to teach. After a bench trial, the court entered an order on February 10, 1981, directing the writ to issue. The order did not set forth which courses petitioner was qualified to teach. We affirm.

The facts involved were largely undisputed. During the 1976-77 school year, petitioner was a full-time high school industrial arts teacher for the district. He asked to be assigned to teach driver's education for the 1977-78 school year and was given an assignment for that year which included mostly those courses. A substantially similar assignment continued through the 1979-80 year when he taught driver's education for five hours one semester and for four the other, and taught leathermaking one hour each semester. He was also assigned two study halls and a preparation period each semester. During March of 1980, respondent decided to reduce its teaching staff and to eliminate some classes. It decided to eliminate the position of a full-time driver's education teacher. Action was commenced to discharge petitioner, but pursuant to his rights under section 24—12, he elected to take the assignment of an industrial arts teacher of less seniority who had been teaching that course on a full-time basis. Because of lessened demand, respondent then reduced the offering of industrial arts courses to the point that petitioner's employment was reduced to a 5/8-time workload. In further planning for the 1980-81 year, a Mr. Cerveny who had been teaching health courses exclusively was assigned to teach those driver's education courses which remained in the curriculum. In addition, he was assigned to a reduced number of health classes. The assignment was apparently made for administrative convenience. Under the plan, students taking driver's training from Mr. Cerveny one semester could take driver's education courses from him the other semester.

Defendant demanded a full-time assignment which was denied. The instant litigation followed.

The pertinent parts of section 24—12 state:

"If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the

number of teachers employed by the board or to discontinue some particular type of teaching service \* \* \* in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a *position* currently held by a teacher who has not entered upon contractual continued service. As between teachers who have entered upon contractual continued service, the teacher or teachers with the shorter length of continuing service with the district shall be dismissed first \* \* \*." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 122, par. 24—12.

The parties do not dispute that the last quoted sentence prohibits the dismissal of a tenured teacher qualified "to hold a position" then held by a tenured teacher of less seniority.

The heart of petitioner's claim is that when a tenured teacher is discharged or assigned to less than full-time employment, and other teachers of less seniority are teaching classes the senior teacher is qualified to teach, section 24—12 requires a public school district to assign a sufficient number of those classes to the senior teacher to enable him to remain in full-time employment if he so desires. Respondent notes that section 24—12 refers only to the senior teacher taking the "position" of the junior teacher if qualified to do so. Respondent maintains the word "position" means the total course assignment of the teacher to be replaced, and that, accordingly, the senior teacher must be qualified to teach the entire caseload of the teacher whose "position" is to be taken.

The difference in the parties' interpretation is illustrated by their positions concerning petitioner's proposed solution to his problem. He had seniority over Mr. Cerveny and claims one way his rights under section 24—12 could have been satisfied would have been for him to have retained sufficient driver's education classes for him to have had a full schedule. However, petitioner was not qualified to teach health, and for that reason respondent maintains he was not entitled to the position assigned to Cerveny.

We find no indication the question has ever been considered by a court of review in this State. In struggling with the question, the parties have cited several cases. In *People ex rel. Brown v. Board of Education* (1978), 66 Ill. App. 3d 169, 383 N.E.2d 711, a tenured teacher had been improperly dismissed. The court held that upon her return to the faculty of the district, it was not required to assign her to the courses she formerly taught but could assign her to any courses she was qualified to teach. The court relied upon the provision of section 24—11 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—11) authorizing the district to transfer a tenured teacher to "a position which the teacher is qualified to fill \* \* \*."

In *Herbach v. Board of Education* (1981), 94 Ill. App. 3d 889, 894, 419 N.E.2d 456, 460, the rule was pronounced that, in making staff reductions, a school district was not required to rearrange the schedule of other teachers "to create a position" which a senior tenured teacher would be qualified to hold. In *Caviness v. Board of Education* (1978), 59 Ill. App. 3d 28, 30, 375 N.E.2d 157, 158, we determined that a reduction of the assignments of a tenured teacher to a less than full-time schedule amounted to a dismissal within the meaning of section 24—12 and entitled her to replace one of two nontenured teachers in "full-time positions for which [she] was qualified."

■■ We cannot accept petitioner's contention that a tenured teacher to be discharged has a right to be assigned to portions of another's teaching assignment rather than to a "position" held by a teacher with less seniority. In the context used in section 24—12, the word "position" has been defined as follows:

"(2) The group of tasks and responsibilities making up the duties of an employee." (Webster's Third New International Dictionary 1769 (1961).

"1. A post of employment; office; job." (Webster's New World Dictionary 1111 (2d ed. 1972).)

The term "position" refers to the totality of a job and not to part of it. Had the legislature intended for the tenured teachers' rights to have extended to a portion of the teaching assignment of another, the legislature would have so stated. The interpretation of section 24—12 in the manner requested by petitioner could create much of the difficulty that could have resulted in *Herbach* had the other teachers' assignments been required to be readjusted to accommodate a tenured teacher. A chain reaction would likely start with senior teachers in turn preempting portions of the teaching assignments of those with less seniority.

Despite our unwillingness to accept petitioner's interpretation of section 24—12, we are impressed with the following statement:

"The statutory term 'position' becomes complicated because of the practice of self-contained classrooms for some grades, and departmentalization to some extent in the middle grades, and subject matter segregation for majors and minors in high school. School districts may exercise wide latitude and autonomy in determining which grades will be clustered and which subjects will be grouped under one teacher and which departmentalized. The courts cannot allow school boards, whether in good or bad faith, to rearrange teaching assignments (positions) in ways which defeat the rights of tenured teachers and circumvent the purpose and spirit of the tenure laws." *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 944, 372 N.E.2d 990, 994.

■■■ We conclude that section 24—12 prohibits a bad faith alignment of teaching assignments to avoid the existence of a "position" which could be filled by a tenured teacher for whom dismissal was sought. Such conduct by a school district would entitle the teacher to retention. Bad faith was not shown here. However, we also agree with the statement in *Hagopian* that teaching assignments made in good faith may also be improper. That was done here. The proceedings to dismiss petitioner, his request to teach industrial arts, the district's decision to reduce the offering of classes in that subject, and the decision to combine the driver's education and health classes within the assignment of Cerveny, were all part of the planning for the 1979-80 school year. At the time petitioner's teaching employment was reduced to part-time, no "position" existed in which a teacher taught the health and driver's education courses. Evidence was presented that respondent had originally planned to eliminate driver's education but upon being advised certain State funds would be lost thereby, decided to offer some courses in that subject. As petitioner had held the position to which those courses had been assigned, no longer had a full assignment and could have taught all of those classes in addition to his present assignment, we deem him to have been entitled under section 24—12 to have been assigned to those classes. As happened, the good faith rearrangement of assignments by respondent operated to "circumvent the purpose and spirit of the tenure laws."

Petitioner's right to teach the driver's training course was sufficient, of itself, to justify the issuance of the writ of *mandamus*.

Petitioner also maintained he was qualified to and had a right to teach welding and electricity taught by teachers of less tenure. A substantial question was presented as to his qualifications and because the problem with reference to his qualification to a "position" involving the teaching of those subjects is in a different posture than that covering his right to teach driver education, we choose not to pass upon that question. As the alignment of teaching assignments in the district are not likely to be the same upon our decision becoming effective, we do not deem a decision necessary.

For the reasons stated the order for issuance of the writ of *mandamus* is affirmed.

Affirmed.

TRAPP and MILLS, JJ., concur.