DONNA PENNELL, Petitioner-Appellant and Cross-Appellee, v. BOARD OF EDUCATION OF EQUALITY COMMUNITY UNIT SCHOOL DISTRICT NO. 4, GALLATIN COUNTY, Respondent-Appellee and Cross-Appellant.

Fifth District   No. 5—84—0705

Opinion filed September 30, 1985.—Rehearing denied November 6, 1985.

Drach & Deffenbaugh, of Springfield, for appellant.

Kerr & Longwell, of Chicago (Marilyn F. Longwell, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

Donna Pennell, a tenured teacher, sought a writ of *mandamus* compelling the board of education of Equality Community Unit School District No. 4 (the board) to assign her to a full-time schedule of courses. She also requested damages. The circuit court of Gallatin County denied the writ but held that plaintiff did not lose her tenure status as a result of her reduction to part-time status. Plaintiff appeals. Defendant cross-appeals regarding plaintiff's tenure status.

The facts involved were largely undisputed. Mrs. Pennell obtained a high school teaching certificate entitling her to teach grades 6 through 12 in April 1972. In August 1972 she received a special type 10 certificate allowing her to teach library science in grades kindergarten through 12.

Mrs. Pennell was hired by the defendant beginning with the 1972-73 school year. She taught library science, one class of seventh-grade language arts (comprising literature, English, and spelling) and had three study halls and a planning period also assigned to her. During the 1973-74 school year, she served as the high school librarian, taught one class of general business, and had three study halls and a planning period. In the years 1974 through 1980, Mrs. Pennell served as the full-time librarian at both the high school and the elementary school. During this time period, Mrs. Pennell also supervised study halls. On January 2, 1980, Mrs. Pennell requested and was granted a maternity leave for the remainder of the 1979-80

school term.

On March 20, 1980, the board met to discuss staffing for the following school year. There the superintendent, Mr. Oxford, recommended employing a half-time librarian. The board approved the superintendent's suggestions; however, no mention was made at this meeting that it was Mrs. Pennell's position that was to be reduced or that she was honorably dismissed from her full-time position. A formal resolution was subsequently prepared to conform to the actions of the board. However, the resolution was neither presented to nor passed by the board in open session.

The superintendent then prepared a tentative schedule for the 1980-81 school year. The tentative schedule had a part-time teacher and a teacher with less seniority than Mrs. Pennell teaching seventh- and eighth-grade language arts. After Mrs. Pennell learned of this schedule, she contacted the superintendent and asked that she be assigned the language arts courses. (Teachers with academic subjects were given a planning period. If Mrs. Pennell had been assigned the two language arts courses and a planning period she would have retained her full-time position.)

The superintendent informed Mrs. Pennell that he did not think she was qualified for the language arts position. However, after checking with the regional superintendent, he admitted that she was qualified but informed her that he still did not intend to recommend her for the position. He then rearranged the schedule so that teachers with more seniority than Mrs. Pennell were scheduled to teach the language arts courses. Mrs. Pennell attended the August 1980 board meeting and there requested a full-time teaching position. However, the board accepted the superintendent's revised schedule, and she remained at half-time status.

During the 1981-82 school year, Mrs. Pennell was hired as a half-time teacher. Another teacher was also hired as a part-time teacher. That teacher worked fewer hours than Mrs. Pennell did and was paid more. When Mrs. Pennell asked for additional compensation, the board further reduced her hours.

In the spring of 1982, Mrs. Pennell informed the superintendent that she would receive her elementary 03 certificate in the summer of 1982 and that she would like a full-time elementary position for the 1982-83 school year. She registered her elementary certificate with the regional superintendent in July 1982 and gave a copy of the certificate to Mr. Oxford. However, the board denied Mrs. Pennell's request and hired a part-time elementary teacher, whereas Mrs. Pennell was again assigned to a part-time library position.

In March 1983, the board voted to reduce Mrs. Pennell to a two-sevenths position for the 1983-84 school year, and the part-time elementary school teacher was dismissed. Mrs. Pennell wrote a letter to the board requesting a full-time position but received a letter from the board refusing her request.

For the 1983-84 school year, approximately six teachers with less seniority in the district than Mrs. Pennell were hired in part- and full-time capacities.

In July 1983, Mrs. Pennell filed her petition for writ of *mandamus* asking that she be assigned a full-time teaching position and awarded damages in the amount of her lost wages.

The plaintiff first contends that the action taken by the board failed to reduce her to part-time status.

During their meeting on March 20, 1980, the board in a closed session discussed personnel for the coming school year. In the meeting, Superintendent Oxford explained that the school district was experiencing financial problems, and he recommended ways to cut expenditures without cutting services to students.

The board then went into open session, the superintendent's recommendations were put in the form of an oral motion, and a vote was taken. The motion is reflected in the board minutes: "1. To employment of all tenured teachers and administrators. 2. Reemployment of janitors, John Hays and Harold Buchnell. 3. Reemploy two cooks. 4. Reemploy Jean Flyer as secretary/bookkeeper on an hourly basis. 5. Employ a half-time librarian. 6. Reemploy Becky Montfort in the same position as this year. 7. Release kindergarten teacher Linda Dickson with honorable release due to declining enrollment." The oral motion was voted on and approved by the board.

Following the meeting, Superintendent Oxford had written resolutions prepared to conform with his recommendations. The following resolution was sent to Mrs. Pennell. "Whereas, at the regular Board of Education meeting held on Thursday, March 20, 1980, it was agreed to cut the librarian, Donna Pennell, to half-time work starting with the 1980-81 school year, due to declining enrollment and projected losses in State Aid ***."

Pursuant to section 24—11 of the School Code (hereinafter the Code), in order to lay off or reduce the position of a tenured teacher, the board must take action at least 60 days before the end of the previous school term and serve notice on the teacher. (Ill. Rev. Stat. 1983, ch. 122, par. 24—11). We find that the superintendent's motion and the board's action, although somewhat ambiguous, was in accordance with the aforementioned statute.

Plaintiff argues that because she is a "teacher" under section 24—11 of the Code, the board reemployed her along with all other tenured teachers. We agree that she is a teacher under the statute, but she was also the librarian in the school district. Plaintiff, in fact, was the only librarian, and she had not been assigned any classes other than study hall since the 1973-74 school term. If the recommendation had made no mention of a librarian, it would have been obvious that plaintiff would have been reemployed full-time. But, given the testimony regarding the recommendations made by the superintendent, Mr. Oxford, as well as the minutes, the only reasonable interpretation of the motion is that the librarian, Mrs. Pennell, was reduced to half-time. Thus the trial court's finding on this point was not against the manifest weight of the evidence and is affirmed.

The second issue raised by the plaintiff is that the board rearranged the teaching schedule in bad faith.

It is well settled that where the legislature has empowered a school board to perform certain acts, courts will not interfere with the exercise of those powers or substitute their discretion for that of the board, unless the board's action is palpably arbitrary, unreasonable, or capricious. *McLain v. Board of Education* (1978), 66 Ill. App. 3d 1024, 1026-27, 384 N.E.2d 540, 542; *Peters v. Board of Education* (1983), 97 Ill. 2d 166, 171, 454 N.E.2d 310, 312.

It has also been held that courts cannot allow school boards, whether in good or bad faith, to rearrange teaching assignments in ways that defeat the rights of tenured teachers and circumvent the spirit of the tenure laws. (*Birk v. Board of Education* (1983), 120 Ill. App. 3d 181, 183, 457 N.E.2d 1065, 1067, *aff'd* (1984), 104 Ill. 2d 252, 472 N.E.2d 407.) Thus, the discretion of the school board to make assignments must be exercised with extreme caution in order not to subvert a fundamental purpose of the tenure act, that being the protection of teachers from political, partisan, capricious, fickle, and irregular decision making. *McNely v. Board of Education* (1956), 9 Ill. 2d 143, 147, 137 N.E.2d 63, 66.

When school boards rearrange curriculum to defeat the rights of a tenured teacher, it cannot be tolerated even if the action is taken under the guise of discretionary authority and duty. (*Newman v. Board of Education* (1981), 98 Ill. App. 3d 976, 984, 424 N.E.2d 1331, 1337.) However, a tenured teacher does not have the right to object to incidental assignments of a single course to established teaching positions that they are unqualified to teach, thereby fractionalizing tenure rights, unless a pattern of incidental reassign-

ments can be proved. (*Higgins v. Board of Education* (1981), 101 Ill. App. 3d 1003, 1008-09, 428 N.E.2d 1126, 1129-30.) We believe that plaintiff has adequately established a pattern of reassignments and events that prove the board acted unreasonably and in bad faith. Although various acts of the board are cumulative evidence of bad faith, it is difficult to discern an exact point in time when the bad faith occurred, hence when the right for damages accrued. Therefore, we must thoroughly examine the circumstances.

Section 24—12 of the Code (Ill. Rev. Stat. 1983, ch. 122, par. 24—12) prohibits a bad faith alignment of teaching assignments to avoid the existence of a "position" that could be filled by a tenured teacher. (*Hayes v. Board of Education* (1981), 103 Ill. App. 3d 498, 502, 431 N.E.2d 690, 693.) Following Mrs. Pennell's reduction to four-sevenths time in the spring of 1980, the superintendent, Mr. Oxford, prepared a schedule for use in the 1980-81 school term. In this schedule, he assigned a part-time teacher, Mrs. Montfort, a seventh-grade language arts course, and a teacher with tenure but less seniority than Mrs. Pennell, Mr. Phelps, an eighth-grade language arts course. When Mrs. Pennell learned of the assignments, she asked Mr. Oxford to assign her these two language arts courses. This assignment would have given her a full-time position for the 1980-81 school year.

Immediately thereafter, Mr. Oxford rearranged the schedule and assigned the language arts courses to two other teachers who had more seniority than Mrs. Pennell. Mr. Oxford stated that he did not offer the language arts course to Mrs. Pennell because "[f]irst of all, she was reduced in force to a half-time teacher or half-time librarian and, secondly, I felt the other two were more qualified to teach the class."

However, the record reveals that Mr. Hatfield told Mr. Oxford that he did not feel qualified to teach the course and that he preferred not to. Mr. Hatfield's college transcript was introduced into evidence, and it showed he had received an E in English, a C in English 101, D's in Introduction to Fiction and Elementary French, and C's in the other English courses.

Mrs. Utter, on the other hand, had not taught language arts before she was assigned it that year. She informed Mr. Oxford that it was not her preference to teach language arts but that she would do what was needed. She asked Mr. Oxford if the assignment was related to Mrs. Pennell's situation, and he stated that it was. She also testified that her teaching certificate was for 6 through 12 grades and it was on its face restricted to home economics. Mrs. Ut-

ter's transcript was introduced into evidence, and it showed that she did indeed have 15 hours of English courses on it; however, the grades were not listed because she had transferred to the University of Illinois from Southeastern Illinois College and all her English courses were taken at Southeastern Illinois College.

These transcripts, when contrasted with that of Mrs. Pennell's, show that Mrs. Utter and Mr. Hatfield were not more qualified in the area of coursework. Mrs. Pennell's transcript indicates that she took 18 hours of English, receiving one A, three B's and two C's in the courses, 6 hours of journalism, receiving A's in the courses, and one principles of speaking course, receiving an A in the course.

We are aware that a tension exists between the rights of tenured faculty and the rights of children in this State to be taught by personnel of experience and ability. (*Newman v. Board of Education* (1981), 98 Ill. App. 3d 976, 984, 424 N.E.2d 1331, 1337.) However, in the case at hand the rights of the children to be taught by someone proficient in the subject would have certainly been met by Mr. Oxford assigning Mrs. Pennell to the position. We are aware that grade points alone cannot be determinative as to qualifications of teaching, but they should be considered together with all other aspects of the individual professional experience and capacity. We note that Mrs. Pennell had received evaluations indicating that she was quite competent and that she, in addition to the courses she had taught, regularly instructed students on how to use the library. It would seem logical that a teacher who has taken more classes in a subject, has received better grades in that subject, and has had evaluations showing her to be competent teaching that subject would be a preferable teacher of that subject than someone who does not feel qualified to teach the subject, has not taken as many classes in the subject, and has never before taught the subject. Mr. Oxford's evaluation as to Mr. Hatfield and Mrs. Utter's superior qualifications appears to be unfounded. Thus, we believe that Mrs. Pennell should have been assigned these courses.

Although we agree with defendant's position that teachers have no right to pick and choose courses to create a position (*Higgins v. Board of Education* (1981), 101 Ill. App. 3d 1003, 428 N.E.2d 1126), as we previously stated section 24—12 of the Code prohibits a bad faith alignment of teaching assignments to avoid the existence of a "position" that could be filled by a tenured teacher for whom dismissal was sought. *Hayes v. Board of Education* (1981), 103 Ill. App. 3d 498, 502, 431 N.E.2d 690, 693.

Although the record is permeated with other instances where

the board dealt with Mrs. Pennell in bad faith, we will mention only a few. In March 1982 Mrs. Pennell informed Mr. Oxford that she had been taking classes and that she would receive her elementary 03 certificate during the summer. She told him that if there was a position in the elementary school, she would appreciate it. The board hired a half-time elementary teacher in August 1982 and thus passed Mrs. Pennell by once again. Mrs. Pennell wrote a letter to the board asserting her rights under the tenure act, and the letter was read at a board meeting. Mrs. Utter testified that she was at the school board meeting when Mrs. Pennell's letter was read; she said that after the letter was read, board member Dale Vickey stated, "Let's fire her and give her a real good case."

In light of the aforementioned persuasive evidence, we must conclude that the trial court's finding was against the manifest weight of the evidence and find that the board manipulated the assignments to defeat the rights of Mrs. Pennell starting with the 1980-81 school year.

We now must address the board of education's cross-appeal. The circuit court held that Donna Pennell did not lose her tenure rights as a result of her reduction to part-time. We agree.

Mrs. Pennell worked full-time as a teacher from 1973 to 1980, when she went on maternity leave. (The statute does not distinguish a "librarian" from a "teacher" and defines a "teacher" as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers" (Ill. Rev. Stat. 1983, ch. 122, par. 24—11).)

We note section 24—11 focuses on the notice of dismissal as the operative fact in preventing tenure from arising, not the reduction to part-time. Furthermore, there was no testimony by Mr. Oxford or by any of the board members that they thought Mrs. Pennell would lose her tenure by accepting part-time work.

Although we agree that our statute emphasizes the necessary relationship between full-time teaching and tenure, it does not appear that it is necessary to remain a full-time teacher to retain tenure. Our supreme court has stated: "Part-time teaching agreed to by an experienced teacher who has tenure at the time of agreement may not cause that teacher to lose tenure, but part-time teaching cannot be relied upon by a nontenured teacher to establish tenure." (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 347, 423 N.E.2d 903, 908.) The mere fact that section 24—11 of the Code requires two years of full-time teaching for a teacher to acquire tenure does not mean that the teacher must continue to teach full-time to main-

tain the status. (*Brown v. Board of Education* (1976), 38 Ill. App. 3d 403, 407, 347 N.E.2d 791, 795.) As this court previously stated in *Brown*, if the legislature desired this result, it would have been very simple for them to place this requirement in the Code. *Brown v. Board of Education* (1976), 38 Ill. App. 3d 403, 347 N.E.2d 791.

A recent case, *Wilson v. Board of Education* (1984), 127 Ill. App. 3d 433, 468 N.E.2d 995, is strikingly similar to the case at hand. In *Wilson*, a tenured teacher had her full-time position reduced to four days per week as a result of health problems. She worked part-time for nine years through the 1982-83 school term, when she was informed that her position would be further reduced to two days per week. At that point, she demanded a full-time position pursuant to her rights under section 24—12 of the Code. The court there held that she had a right to be employed in any full-time position held by a nontenured or a less-senior tenured teacher that she was legally qualified to fill.

As our supreme court stated in *Johnson*, the tenure system is intended to provide continuity and stability for students; provide some degree of job security, thus affording teachers the ability to pursue a career free from arbitrary hiring and firing; attract teachers of high quality; and retain experienced teachers. Mrs. Pennell was not inexperienced. She worked full-time for seven years with students. In light of the aforementioned facts, we hold that Mrs. Pennell did not lose her tenure as a result of being reduced to part-time. However, the board retains the discretion to determine her teaching position.

For the foregoing reasons, the judgment of the circuit court of Gallatin County is reversed and remanded with directions to issue the writ of *mandamus* and to determine the amount of damages to which Mrs. Pennell is entitled.

Reversed and remanded with directions.

KARNS and HARRISON, JJ., concur.