RUSSELL K. KOERNER, Plaintiff-Appellant, v. JOPPA COMMUNITY HIGH SCHOOL, DISTRICT No. 21, Defendant-Appellee.

Fifth District No. 5—85—0342

Opinion filed May 6, 1986.

Mitchell & Armstrong, Ltd., of Marion (William A. Armstrong and Brian D. Lewis, of counsel), for appellant.

Lee Ellen Starkweather, of James W. Sanders & Associates, of Marion, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals a judgment of the circuit court of Massac County rendered for defendant school district in plaintiff's action seeking a declaratory judgment that his dismissal as superintendent and tenured teacher of defendant school district was invalid.

The plaintiff, Russell Koerner, brought suit against defendant, Joppa Community High School District No. 21, to establish that he had a valid contract of employment as a teacher for defendant school district. Plaintiff brought this action after the board of education of the school district took measures to discharge him. Plaintiff relies on the contractual continued service sections of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 1—1 et seq.), specifically, section 24—12 of the Code which pertains to removal or dismissal of teachers in contractual continued service. That section requires that written notice of the dismissal be given to a tenured teacher "at least 60 days before the end of the school term." (Ill. Rev. Stat. 1983, ch. 122, par. 24—12.) Plaintiff asserts that the school district did not provide him with the 60-day dismissal notice that he is entitled to under that section.

At the hearing on plaintiff's action for declaratory judgment, both parties stipulated to the facts and presented issues of law to the court. The stipulated facts are as follows.

The plaintiff had been employed on an annual basis as superintendent of defendant school district for more than five consecutive years. While employed as superintendent, plaintiff retained his teacher's certificate. During February 1984, the board of education of defendant school district (hereinafter the board) determined that plaintiff would not be retained as superintendent for the following year. However, plaintiff retained his tenure as a teacher, having been a full-time employee of defendant school district for more than two consecutive terms. See Ill. Rev. Stat. 1983, ch. 122, par. 10-21.4.

Defendant school district is a municipal corporation duly organized under the State of Illinois and the School Code. Under the School Code, to discharge a tenured teacher a school district must give the teacher written notice of the dismissal at least 60 days before the close of the school term.

On February 28, 1983, the board prepared the annual calendar for

the 1983—84 school year, which set the opening date on August 19, 1983, and the closing date on May 31, 1984. At a March 19, 1984, school board meeting, the board voted to change the closing date of school from May 31, 1984, to May 23, 1984.

At a later meeting on March 26, 1984, a continuation of the March 19 meeting, the board authorized the issuance of a written notice of dismissal to plaintiff, which was mailed on March 29, 1984. Plaintiff ultimately received the notice of dismissal on April 2, 1984, after having been given notice of the attempted service on March 31, 1984.

During the March 26 meeting the board also voted to declare May 24, 25, 29, 30 and 31, 1984, to be school holidays.

Plaintiff subsequently filed suit for a declaratory judgment on June 4, 1984, in the circuit court of Massac County, seeking a judgment declaring that plaintiff still had a valid contract with defendant school district. Plaintiff based his action on his contention that school had closed on May 23 and that, therefore, he did not receive notice of dismissal 60 days prior to the close of school as required by section 24—12 of the School Code.

A hearing on the issues of law involved in the case was held on February 27, 1985. Plaintiff's position was that the date school closed, May 23, 1984, was the "end of the school term" as that phrase is used in section 24—12. Defendant's view was that although the board voted to close school on May 23, such action did not constitute an amendment to the school calendar, and, therefore, the school term did not end until May 31, 1984, a date that would make timely the "60-day" notice given plaintiff.

■ The trial court held for the school district, finding that a 60-day notice of dismissal was given inasmuch as the close of the school term was May 31, 1984. In his appeal the plaintiff raises but one issue for review: whether the trial court erred in finding that the 1983—84 school term of the defendant school district did not end on May 23 when school was closed.

The issue can be simplified by focusing on whether the required 60-day notice of dismissal was actually given. We hold that the 60-day notice was not given and that the trial court erred in its finding that the 1983—84 school term did not end on May 23.

Whether there was 60-day notice of termination depends upon the interpretation of two resolutions of the board. The two resolutions in question are the resolution adopted at the March 19, 1984, meeting and that adopted at the March 26, 1984, meeting. There is no dispute that the March 26 meeting was a continuation of the March 19 meet-

ing. The resolution of March 19 was:

> "MOTION by Morse, seconded by Schmidt, to declare May 15, 1984, as graduation and closing of school on May 23, 1984. [Motion Carried.]"

The motion of March 26 was:

> "MOTION by Burnett, second by Johnson, that May 24, 25, 29, 30, and 31, 1984, be declared school holidays. [Motion Carried.]"

If the resolution adopted at the March 19 meeting fixing the closing of school on May 23, 1984, is given effect, as plaintiff contends it should be, then the required 60-day notice was not given. However, if the March 19 resolution is not given effect as fixing the closing of school for May 23, as defendant argues, then the initially fixed date of May 31, 1984, as the end-of-term date, stands, and the required 60-day notice was given. We conclude that the correct interpretation of the effect of the two resolutions in question is that the 60-day notice was not given because the March 19 resolution, as adopted, resulted in fixing the end of the school term on May 23, 1984, and the resolution of March 26, 1984, had no effect upon the close of the school term.

The March 19 resolution provided for the shortening of the school term from May 31 to May 23. This action was apparently taken in order to compensate for unused snow days that had been anticipated when the 1983—84 school term was originally adopted. The board is granted the power to shorten the school term by section 10—19 of the School Code. Section 10—19 provides, in relevant part:

> "Each school board shall annually prepare a calendar for the school term, specifying the opening and closing dates and providing a minimum term of at least 185 days to insure 176 days of actual pupil attendance, computable under Section 18—8. *** A school board may specify a closing date earlier than that set on the annual calendar when the schools of the district have provided the minimum number of computable days under this Section." (Ill. Rev. Stat. 1983, ch. 122, par. 10—19.)

On February 28, 1983, the board prepared the annual calendar for the 1983—84 school year which set the opening date on August 19, 1983, and the closing date on May 31, 1984. However, when the board adopted the March 19 resolution to declare May 15, 1984, as graduation and May 23, 1984, as the closing of school, the board exercised its power under section 10—19 and effectively moved the closing date from May 31, 1984 to May 23, 1984.

As stated in *Purn v. Board of Education* (1982), 106 Ill. App. 3d

790, 792, 437 N.E.2d 33, 34, "[i]n its discretion, a school board may specify a closing date earlier than that set originally when the district schools have provided the minimum number of days." The board validly utilized the control granted to it under section 10—19 of the School Code, thus making the end of the school term May 23, 1984.

Defendant urges that the May 23 resolution should not be controlling since at the March 26, 1984, meeting, the board adopted a motion declaring the days of May 24, 25, 29, 30 and 31 of 1984 to be school holidays. The purpose and effect of this resolution of March 26 was, they insist, to fix May 31 as the last day of school and make the 60-day notice given plaintiff timely.

Although "[s]chool boards may establish commemorative holidays whenever in their judgment such action is advisable," (Ill. Rev. Stat. 1983, ch. 122, par. 24—2), declaring these five days to be school holidays was a nullity because the board neglected to rescind its resolution of March 23, 1984, that had fixed the close of school as May 23. Only if the end of the term had been changed back to May 31 would the additionally declared holidays be meaningful. With graduation ceremonies on May 15 and the close of school on May 23, as fixed by the resolution of March 23 and unaltered by the resolution of May 26, the newly designated holidays applied to a period when there were no classes, no teachers and no students. Thus, the "holidays" gave no exemption, release or cessation from any duties or functions to be performed by any person having a connection with defendant district. In short, there were no holidays.

The board could have changed the end of the term back to its original May 31 date under section 10—19 of the School Code, but it did not do so. If legally effective, the holiday declaration would have achieved the apparent goal of tacking on extra days so that the defendant school district would have the full 60-day dismissal notice it needed to discharge defendant. Appropriate here is the following from *Pennell v. Board of Education* (1985), 137 Ill. App. 3d 139, 143, 484 N.E.2d 445, 448: "When school boards rearrange curriculum to defeat the rights of a tenured teacher, it cannot be tolerated even if the action is taken under the guise of discretionary authority and duty." Just as in *Pennell* where the school board was rearranging the curriculum to defeat the rights of the teacher, here the school board rearranged its calendar and holiday structure to defeat the statutory rights of the plaintiff. Such action cannot be sanctioned.

The conclusion made by the trial court, that the board did not intend by its resolution of March 19 to effect a change in its official calendar or to shorten the term, is faulty. It is plain from the minutes of

the March 19 meeting that the board intended to, and did, effect a change in its calendar by shortening the term so as to end on May 23. The board did nothing at the March 26 meeting, a continuation of the March 19 meeting, to amend the resolution adopted at the March 19 meeting. Therefore, the resolution stood as adopted—that May 23 would be the closing date for school, the end of the term.

Plaintiff ultimately received the notice of dismissal on April 2, 1984, after having been given notice of attempted service on March 31, 1984. Hence, plaintiff was not given notice 60 days before the end of the term.

Although it was determined that plaintiff would not be retained in his position as superintendent, plaintiff kept his tenure as a teacher, having been a full-time employee of defendant school district for more than two consecutive terms. In order to discharge a teacher under the School Code, a school district must give the teacher written notice of the dismissal at least 60 days before the close of the school term. Plaintiff is entitled to this notice under section 24—12 of the School Code which provides: "written notice shall be given the teacher by certified mail return receipt requested at least 60 days before the end of the school term ***." (Ill. Rev. Stat. 1983, ch. 122, par. 24—12.) In addition, *Neal v. Board of Education, School District No. 189* (1977), 56 Ill. App. 3d 10, 14, 371 N.E.2d 869, 872, held that "[t]he teacher tenure act is essentially procedural. A teacher under contractual continued service can be dismissed for cause, but such dismissal can be validly accomplished only by adherence to the methods prescribed by section 24—12 of the School Code."

Further, "[t]he 60-day notice required to be given to a teacher if that individual is to be dismissed is a mandatory requirement, it cannot be waived nor circumvented. The 60-day notice is a statutory requirement, not a school board administrative policy." *Hagopian v. Board of Education of Tampico Community Unit School District No. 4* (1978), 56 Ill. App. 3d 940, 945, 372 N.E.2d 990, 994; see Ill. Rev. Stat. 1983, ch. 122, par. 24—12.

■ Plaintiff's rights were substantially affected by not receiving the full 60-day notice. The notice requirement, an essential element of the tenure laws, provides a procedural safeguard to insure that continuous service will be based on merit for able, experienced teachers and dismissal will not occur for "political, partisan or capricious reasons." (*Evans v. Benjamin School District No. 25* (1985), 134 Ill. App. 3d 875, 879, 480 N.E.2d 1380, 1383-84, citing *Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 344, 423 N.E.2d 903, 906.) Therefore, we must reverse the trial court's decision in this case because

plaintiff's rights were substantially affected by not receiving the 60-day notice. Because defendant school district did not provide proper notice of dismissal as it is required to do under section 24—12, the dismissal of plaintiff was ineffective and plaintiff still has a valid teaching contract with defendant school district.

Reversed.

HARRISON and WELCH, JJ., concur.